## COMMONWEALTH vs. DAVID J. PARKER
## (and three companion cases [1]).

Plymouth. March 9, 1988. — May 9, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Robbery. Larceny. Intent. Intoxication. Felony-Murder Rule. Joint Enterprise. Constitutional Law,* Admissions and confessions, ·Waiver of constitutional rights. *Waiver. Practice, Criminal,* Voluntariness of statement, Grand jury proceeding, Severance, Instructions to jury. *Arrest.*

The judge at a criminal trial erred in failing to charge the jury, at the defendants' request, on the possible effect of voluntary intoxication on the ability to form the specific intent required for the felonies of unarmed robbery and the lesser included offense of larceny from the person. [335-336]

At the trial of two defendants for murder on the theory of felony-murder, it was error for the judge to preclude the jury from considering whether the defendants' voluntary intoxication affected their ability to form the specific intent required for the underlying felony, unarmed robbery. [336]

At the trial of two defendants for first degree murder on a joint enterprise theory, the judge erred in instructing the jury not to consider voluntary intoxication as it may have affected either defendant's ability to form the shared intent required for conviction on that theory. [336-337]

Where, in a first degree murder case, it could not be determined whether the convictions of the two defendants were based on any theory untainted by the judge's incorrect instructions to the jury, the verdicts of guilty were set aside. [337]

In a murder case, the judge hearing a motion to suppress confessions of the two defendants was warranted in concluding on the evidence before him that the defendants made a knowing and intelligent waiver of their constitutional rights before making inculpating statements [339-340], and that the statements were voluntary [340-341].

There was no evidence in the record of a murder trial that police officers intentionally and in violation of G. L. c. 276, § 33A, deprived the defendants of the use of a telephone at the police station to which the defendants had come voluntarily and given confessions [341].

[1] Two against Wayne D. Parker and one against David J. Parker.

In a murder case the defendants' motions to suppress physical evidence were properly denied where the record supported the judge's conclusion that the defendants freely and voluntarily consented to the search of their house that yielded the evidence. [341-342]

The presence of an additional assistant district attorney for the sole purpose of assisting the chief prosecutor during grand jury proceedings provided no basis for a motion to dismiss murder indictments which the grand jury returned. [342]

There was no error at a murder trial in the denial of one defendant's motion to sever his trial under the rule of *Bruton* v. *United States*, 391 U.S. 123 (1968), where both codefendants testified and were cross-examined [342], nor was any reason for severance demonstrated under the rule of *Commonwealth* v. *Moran*, 387 Mass. 644 (1982), inasmuch as neither codefendant sought to shift blame to the other [343].

At a murder trial, there was no error in the judge's refusal to instruct the jury on the lesser included offense of voluntary manslaughter, where no reasonable jury could have accepted the defendants' assertion that the brutal killing of the elderly, handicapped victim was provoked. [343-345]

INDICTMENTS found and returned in the Superior Court Department on May 30, 1984.

Pretrial motions were heard by *Allan M. Hale*, J., and the cases were tried before *George Jacobs*, J.

*Kevin J. Reddington* for Wayne D. Parker.

*Thomas L. Largey* for David J. Parker.

*Ann E. Rascati*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendants, brothers Wayne Parker and David Parker, appeal from their convictions of murder in the first degree. Also on appeal are Wayne's conviction of unarmed robbery (on an indictment charging armed robbery), and David's conviction of larceny from the person (on an indictment charging armed robbery). The defendants join in arguing several grounds for reversal. We hold that it was error for the trial judge to refuse to provide requested instructions to the jury concerning the effects of intoxication on the defendants' ability to form the specific intent required for the crimes of unarmed robbery and larceny from the person. We also hold that the judge erred by charging the jury that voluntary intoxication could not be considered in determining whether the defendants were engaged in a joint criminal venture and

whether they were guilty of murder in the first degree under the felony-murder doctrine. Accordingly, we reverse the defendants' convictions.

We recite some of the facts that the jury could have found, leaving others for discussion as specific issues arise.

The defendants and the victim, Jose Gomes, on May 4, 1984, were driving in the defendants' automobile with the intention of going to see the ocean. Wayne drove, David sat in back, and Gomes occupied the front passenger's seat. Gomes was an elderly man who suffered the handicap of having no fingers. All three individuals consumed alcohol during the drive. At some point, an argument over money ensued, and Wayne stopped the vehicle. Wayne reached into Gomes's pocket, took his money and pushed Gomes from the vehicle. After driving a few minutes, the defendants returned and told Gomes to get back in the vehicle and returned his money. The argument continued, however, and Wayne reached into Gomes's pocket and took the money again, whereupon David began choking Gomes from behind. Wayne pushed Gomes out of the vehicle, and the defendants drove away. After driving a short distance, the defendants turned their automobile around and returned to the scene. Upon arriving, the defendants discovered that Gomes was still alive. David choked him again, and hit him on the head with a stone found nearby. The brothers dragged Gomes off the roadway into a gravel-filled depression, and threw more rocks at the victim's head.

1. *Intoxication instructions.* The judge erred in failing to charge the jury, upon request, on the possible effects of intoxication on the ability to form the specific intent required for the felony of unarmed robbery and the lesser included offense of larceny from the person. We held in *Commonwealth* v. *Henson*, 394 Mass. 584, 593 (1985), that: "It is time to announce that where proof of a crime requires proof of a specific criminal intent and there is evidence tending to show that the defendant was under the influence of alcohol or some other drug at the time of the crime, the judge should instruct the jury, if requested, that they may consider evidence of the defendant's intoxication at the time of the crime in deciding

whether the Commonwealth has proved that specific intent beyond a reasonable doubt." The judge, apparently uncertain whether our holding in *Henson* applied to unarmed robbery cases, did not instruct the jury as to *Henson* principles. We must, therefore, set aside the verdict of guilty of unarmed robbery against Wayne Parker, and the verdict of guilty of larceny from the person against David Parker.

The judge further erred by instructing the jury that "voluntary intoxication has no effect upon a jury's determination or consideration of first degree murder on the basis of felony murder. It also has no effect upon joint enterprise factors." Defense counsel objected to this instruction at the conclusion of the judge's charge. As we explained above, voluntary intoxication can, indeed, be considered by the jury as it affects a defendant's ability to form the specific intent required for the underlying felony in a first degree murder case based on the felony-murder doctrine. It was error for the judge to preclude the jury from considering the bearing, if any, that either defendant's intoxicated condition had on his ability to form the specific intent to steal.

It was also error for the judge to charge the jury not to consider either defendant's intoxication as it may have affected his ability to form the shared intent required to support a joint enterprise theory. Although the judge provided extensive instructions on the necessary elements of joint enterprise, in addition to an instruction that all the evidence (including evidence of the defendants' intoxication) could be considered by the jury in making its final determinations, we cannot ignore the erroneous portion of the judge's charge. "[T]he fact that some of the instructions were correct is not determinative because 'we cannot know whether the jury were guided by the correct or incorrect portion of the instruction.' " *Commonwealth v. Nieves*, 394 Mass. 355, 362 (1985), and cases cited. *Commonwealth v. Mulica*, 401 Mass. 812, 818 (1988). We need not decide whether a separate intoxication instruction on the ability to form a shared intent is required when the Commonwealth argues a joint enterprise theory at trial. To dispose of this case, we need only hold that it was reversible error for

the judge to instruct the jury that voluntary intoxication could not be considered. See *Commonwealth* v. *Glass*, 401 Mass. 799, 809-810 (1988); *Commonwealth* v. *Tevenal*, 401 Mass. 225, 230-231 (1987) (even though separate intoxication instructions are not required on issue of defendant's conscious disregard for risk to human life, judge's charge should not foreclose jury from considering evidence of defendant's voluntary intoxication).

The jury found the defendant, Wayne Parker, guilty of murder in the first degree on the ground of felony-murder and on the ground of deliberately premeditated malice aforethought. The jury found David Parker guilty of murder in the first degree on the single basis of deliberately premeditated malice aforethought. Because the judge's erroneous charge clearly tainted the conviction premised on felony-murder, and because we cannot determine whether the convictions based on deliberate premeditation were found by the jury on a joint enterprise theory, the verdicts of murder in the first degree against both Wayne and David must be set aside.

We next consider the issues raised on appeal that are likely to arise at retrial.

2. *Motions to suppress.* The defendants each filed pretrial motions to suppress oral and written statements given to the police. After hearings, the motions were denied. On appeal, the defendants contend that their confessions were the product of illegal arrests and should not have been admitted at trial. We disagree.

After hearing evidence, the judge made the following findings of fact. On May 10, 1984, police officers obtained a warrant authorizing a search of the premises where the defendants were known to be residing. The police officers went to the residence that evening and made a peaceful entry. They informed the defendants that they were investigating Gomes's murder and had a warrant to search the premises. At this time, the defendants were read their rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and they indicated that they understood them.

Police officers then commenced a search of the residence. In accordance with routine procedure, the officers requested that the defendants remain in one area of the home while the search was being conducted. The defendants complied with this request. During this time, the officers made observations of the Parkers, and concluded that they were not under the influence of alcohol or controlled substances.

The defendants were then asked if they would answer some questions at the Halifax police station concerning Gomes's death. Although informed that they were not under arrest, the defendants agreed to be questioned at the station. To ensure that no evidence would be concealed or destroyed, the officers accompanied the Parkers to their rooms and watched them change into their street clothes. The defendants were then transported to the police station in separate vehicles. They were not handcuffed. Upon reaching the station, the police conducted separate interviews with the defendants.

Prior to questioning, both defendants were readvised of their Miranda rights and provided with printed Miranda cards. After reading the cards and indicating that they understood their rights, the defendants signed the cards. Both defendants agreed to answer questions and subsequently each gave a statement in which they detailed the killing of Jose Gomes. Both defendants were then arrested.

The defendants next agreed individually to repeat their statements on videotape. While waiting for the videotape equipment to arrive, the defendants had doughnuts and coffee with the police officers. At that time, the defendants revealed that personal property of the victim was hidden in their home, and they both signed consent forms authorizing a further search of their home.

Before the videotaping, the defendants were again advised of their Miranda rights. During the videotaping, the defendants acknowledged that both their previous inculpatory statements and the videotaped confessions were voluntary, made with full understanding of their rights, and were not prompted by coercion or inducements. Both defendants appeared "alert, sober, relaxed and in full command of all [their] senses" throughout the taping procedure.

The motion judge determined that the defendants were not under arrest until each made a confession at the Halifax police station. The motion judge further found that the defendants' statements made that evening followed a knowing and intelligent waiver of their constitutional rights, and that the confessions were not the result of police coercion or inducements of any kind. The conclusions were fully warranted.

We begin with the proposition that we accept a motion judge's subsidiary findings of fact and give substantial deference to his ultimate conclusions, if they are supported by the evidence. *Commonwealth* v. *Meehan*, 377 Mass. 552, 557 (1979), cert. dismissed, 445 U.S. 39 (1980). Here, we uphold the judge's determinations that the defendants were not under arrest at their home, and that the defendants voluntarily accompanied the officers to the police station. These conclusions were amply supported by the evidence.

While the defendants were accompanied by officers at all times during the search of the residence, the restraint was minimal and for the limited purpose of preventing the destruction of evidence. In addition, police officers explicitly informed the defendants that they were not under arrest. At no time did the officers display or use their weapons. We have noted there is no arrest unless a reasonable person on the scene would perceive that the defendants were being forcibly detained. *Id.* at 559. On these facts, a reasonable person could not conclude that the Parkers were under arrest in their home.[2] It is also clear that the defendants voluntarily accompanied the officers to the police station.[3]

---

[2] The fact that Miranda warnings were given to the defendants at their home does not mandate the conclusion that the defendants were then under arrest. Rather, the defendants were informed of their rights "out of abundant caution to counteract any coercive element." *Commonwealth* v. *Alicea*, 376 Mass. 506, 513 (1978).

[3] The defendants' reliance on *Commonwealth* v. *Bottari*, 395 Mass. 777 (1985), is misplaced. In that case, police officers, acting on an informant's tip, surrounded the defendant's vehicle. At gunpoint, the defendant and his companions were ordered out of the automobile. We suppressed evidence from the arrest because the police conduct exceeded the limits of an investigative stop and probable cause was lacking for a valid arrest. *Id.* at 782-783. There was no such showing of force in the instant case.

The Commonwealth must prove, beyond a reasonable doubt, that the defendants made a knowing and intelligent waiver of their rights before making their statements to the police. *Commonwealth* v. *Day*, 387 Mass. 915, 920 (1983). During the hearings on the defendants' motions, the Commonwealth introduced credible evidence that the defendants: (1) were repeatedly advised of their constitutional rights; (2) indicated an understanding of these rights; and (3) voluntarily waived their Miranda rights on the evening in question. In addition, the Commonwealth presented the testimony of investigating officers who observed the defendants during the execution of the search warrant and the questioning at the police station. These police officers expressed the opinion that the defendants were not under the influence of alcohol or controlled substances. Based on this evidence and a personal viewing of the videotapes, the judge concluded that there had been a valid waiver of constitutional rights.

There was no error in the judge's conclusion that the Commonwealth met its burden of proof in the instant case. The evidence presented to the motion judge contradicted the defendants' assertions that they were too tired and intoxicated to have knowingly and intelligently waived their constitutional rights. The judge was fully warranted in concluding that the defendants executed a valid waiver of their Miranda rights. We therefore turn to the related question whether the defendants' confessions were voluntary.

The defendants contend that their statements were a product of an overborne and weakened will. The defendants maintain that their physical and emotional conditions were debilitated as a result of excessive drinking during the few days prior to the interrogation. Accordingly, the defendants challenge the motion judge's finding that they voluntarily confessed to the killing of Gomes.

To ensure that the defendants' statements were freely given and voluntary, the judge must examine the totality of the relevant circumstances, including the evidence of the defendants' conduct, their physical and mental conditions, and the details of the interrogations. *Commonwealth* v. *Wilborne*, 382 Mass.

241, 252 (1981), and cases cited. Although alcohol intoxication is an important factor bearing on the issue of voluntariness, intoxication alone is not sufficient to negate an otherwise voluntary act. *Commonwealth* v. *Lanoue*, 392 Mass. 583, 587 (1984).

After viewing the videotaped confessions, the judge made findings that each defendant was both sober and relaxed as he recounted the details of the killing. This finding was supported by the investigating officer's testimony that both defendants appeared sober on the evening of the interrogation. There is no indication on the record that the defendants were subjected to an unnecessarily lengthy interrogation, or that they were deprived of food, drink or other physical necessities. Nor is there evidence that the defendants were threatened or cajoled into making the statements. The judge did not err in denying the defendants' motions to suppress their statements.

The defendants further argue that the police officers intentionally violated G. L. c. 276, § 33A (1986 ed.), by failing to inform them of their right to use a telephone upon arrival at the police station. The defendants claim that suppression of their confessions is a reasonable sanction for noncompliance with § 33A.

On review of the record, there is no evidence that the police intentionally prevented the defendants from communicating with family members or counsel by failing to inform them within one hour of arrest of their right to make a telephone call. The defendants in this case were fully informed of their Miranda rights and had access to a telephone, but did not request to make a call. Two to three hours later, during the booking procedure, the defendants were informed of their right to use a telephone. Although it was error for the police officers not to inform the defendants in a timely manner of their right to make a telephone call, the error does not warrant suppression of the confessions on the record in this case. *Commonwealth* v. *Jones*, 362 Mass. 497, 502-503 (1972) (suppression warranted only where police intentionally deprive defendant of telephone call).

The defendants also submit that the motion judge erroneously denied their motion to suppress physical evidence seized during

the second search of their residence. We are unpersuaded. The record supports the judge's conclusion that the totality of the circumstances demonstrated beyond a reasonable doubt that the defendants freely and voluntarily consented to a second search.[4]

3. *Motion to dismiss indictments.* The defendants assert that the judge erred in denying their motion to dismiss the indictments based on the presence of an additional assistant district attorney during the grand jury proceedings. The defendants' argument is without merit. The Massachusetts Rules of Criminal Procedure provide that: "Attorneys for the Commonwealth who are *necessary or convenient* to the presentation of the evidence . . . may be present while the grand jury is in session" (emphasis added). Mass. R. Crim. P. 5(c), 378 Mass. 850 (1979). Since the assistant district attorney was not present as a grand jury witness, but merely as an assistant to the chief prosecutor, the judge properly denied the motion to dismiss.

4. *Motion to sever.* Wayne filed a motion pursuant to rule 9(d)(1) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 859 (1979), for a severance of his trial from the trial of his codefendant, David. Wayne presented two grounds in support of his motion: (1) that the law pursuant to *Bruton* v. *United States*, 391 U.S. 123 (1968), mandates severance; and (2) that State law requires separate trials under *Commonwealth* v. *Moran*, 387 Mass. 644, 660-661 (1982).

Under the rule espoused in *Bruton* v. *United States, supra,* the confrontation clause of the Sixth Amendment to the United States Constitution entitles a defendant to severance where a codefendant's confession is admitted inculpating the defendant, and the codefendant does not take the stand. Both Wayne and David took the stand and were subjected to cross-examination. Therefore, as regards the *Bruton* issue, there was no error. *Commonwealth* v. *Moran*, 387 Mass. 644, 655 (1982).

---

[4] Nor are we persuaded by the defendants' argument that the search warrant was illegal "ab initio" because it was not issued by a neutral magistrate. The record indicates that the magistrate retyped the supporting affidavit before issuing a search warrant. This action, by itself, in no way detracted from the magistrate's impartiality.

As we noted, however, in *Commonwealth* v. *Moran, supra,* our inquiry as to the necessity of severance does not end with a *Bruton* analysis. Rule 9(d)(1) of the Massachusetts Rules of Criminal Procedure provides: "If it appears that a joinder of offenses or of defendants is not in the best interests of justice, the judge may upon his own motion or the motion of either party order an election of separate trials of counts, grant a severance of defendants, or provide whatever other relief justice may require." Although severance under this rule is usually a matter within the sound discretion of the trial judge, defendants should not be tried jointly where their defenses are "mutually antagonistic and irreconcilable," and "[t]he prejudice to each defendant [is] compelling." *Commonwealth* v. *Moran, supra* at 659. See *Commonwealth* v. *Sinnott,* 399 Mass. 863, 874 (1987). These defendants were not so situated.

In *Commonwealth* v. *Moran, supra,* the Commonwealth's theory of the case was that at least one of the defendants, but not necessarily both of them, robbed and killed the victim. We held that their defenses were antagonistic and irreconcilable because "[t]he only realistic escape for either defendant was to blame the other." *Id.* at 659. Here, both defendants admitted to their participation in the crime. There is no suggestion from the evidence that one defendant could exculpate himself by shifting exclusive blame to the other, nor did one defendant seek to avoid responsibility by putting blame on the other. There was no error in denying the defendants' motion to sever.

5. *Manslaughter charge.* Defense counsel argued to the judge that because evidence was presented that the victim struck two blows to the face of Wayne during the course of the robbery, sufficient evidence of provocation existed to require the judge under Massachusetts law to instruct the jury on the lesser included offense of voluntary manslaughter. The judge replied that in ruling on whether an instruction on manslaughter should be given he would consider the evidence "in a view most favorable to the Commonwealth." Obviously, that was a slip of the tongue.

It is well-established that a manslaughter charge should be given if, on any view of the evidence, a finding of manslaughter

would be warranted. See, e.g., *Commonwealth* v. *Garabedian*, 399 Mass. 304, 313 (1987). After reviewing the record, however, we find that the judge's misstatement of the law did not affect the correctness of his decision to refrain from charging the jury on voluntary manslaughter.

Instructions on voluntary manslaughter are required "if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool." *Commonwealth* v. *Schnopps*, 383 Mass. 178, 180 (1981), S.C., 390 Mass. 722 (1984). "The evidence must be sufficient to create a reasonable doubt in the minds of a rational jury that a defendant's actions were both objectively and subjectively reasonable." *Commonwealth* v. *McLeod*, 394 Mass. 727, 738, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985).

In considering the evidence of the alleged provocation by the victim, we remain mindful that "[t]he fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereupon. . . . However incredible the testimony of a defendant may be he is entitled to an instruction based on the hypothesis that it is entirely true." *Commonwealth* v. *Garabedian*, *supra* at 313, quoting *Commonwealth* v. *Schnopps*, *supra* at 182. However, even assuming as true the defendants' testimony that during the incident the victim struck two blows to Wayne's face, the defendants' assertion that a trier of fact could infer from these acts that there existed sudden combat or reasonable provocation for a malice-free killing, is untenable. Given the circumstances of the crime, the victim's age (he was seventy-nine years old), and his handicapped condition, no reasonable jury could have accepted the suggestion that the defendants were provoked into the brutal killing. See *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 321 (1973) (scratches on defendant-husband's face caused by victim-wife deemed insufficient evidence of provocation to warrant manslaughter charge). Moreover, the blows to Wayne's face could hardly be considered reasonable provocation for David twice to choke the victim, and then later to

join with Wayne in stoning the victim. Despite the judge's misstatement of the proper evidentiary standard, we find no error in his refusal to charge the jury on voluntary manslaughter.

The judgments against Wayne Parker for murder in the first degree and for unarmed robbery are vacated, as are the judgments against David Parker for murder in the first degree and for larceny from the person. The cases are remanded to the Superior Court for a new trial.

*Judgments reversed.*

*Verdicts set aside.*