**STATE of Iowa, Appellant,**

v.

**Debra Jo JOHNSON–HUGI, Appellee.**

**No. 90–1798.**

Supreme Court of Iowa.

May 13, 1992.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., and Paul L. Martin, County Atty., for appellant.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds Lapointe, Asst. State Appellate Defender, for appellee.

McGIVERIN, Chief Justice.

Iowa Rule of Criminal Procedure 27(2)(a) provides that, unless good cause is shown, a district court must dismiss a prosecution against a defendant if an indictment is not found until more than forty-five days after the defendant's "arrest." The district court concluded, and the court of appeals agreed, that because defendant Debra Jo Johnson–Hugi had been "arrested" more than forty-five days before a trial information[1] had been filed against her, dismissal of the prosecution was required.

We disagree. Accordingly, we vacate the decision of the court of appeals, reverse the district court judgment and remand.

I. *Background facts and proceedings.* In the spring of 1990, an undercover agent of the Iowa division of narcotics enforcement allegedly purchased a quantity of amphetamine from defendant Johnson–Hugi. Several days later, the agent gave defendant $750 in order to purchase more drugs for him. However, this transaction never occurred.

On May 22, the agent went to defendant's residence accompanied by a woman undercover officer. After it became apparent that defendant would not supply any

---

1. Iowa Rule of Criminal Procedure 5(5) provides, in part, that "[t]he term 'indictment' embraces the trial information, and all provisions of law applying to prosecutions on indictments apply also to informations...."

additional drugs, the officers identified themselves as agents of the division of narcotics enforcement. They offered defendant the alternative of either cooperating with them as a confidential informant or being arrested for delivering a controlled substance. At no time did the agents tell defendant that she was under arrest.

After a brief discussion, defendant decided to cooperate with the agents as a confidential informant. The woman agent then searched defendant's purse and patted her down. The officers drove defendant to the Iowa highway patrol station where she filled out forms confirming her status as a "cooperating individual." While at the station, defendant was read her *Miranda* rights. After defendant finished filling out the forms, the officers returned defendant to her residence.

On numerous occasions thereafter, the original undercover agent attempted to contact defendant in order to obtain information on drug activity in the area. The agent left several messages for defendant requesting that she contact him; however, defendant apparently never responded to any of these messages. On one occasion when the agent did successfully contact defendant, she told him that she did not want to work for the authorities because "everyone knew that [she was] a narc." The agent ultimately concluded that defendant was not going to cooperate with him as she had originally agreed. Thus, on August 22, 1990, authorities arrested defendant for her prior sale of amphetamine to the undercover agent.

Fifteen days later, on September 6, 1990, the State filed a trial information against defendant charging her with delivery of a schedule II controlled substance. *See* Iowa Code §§ 204.206(4); 204.401(1) (1989). Defendant thereafter moved to dismiss the charges pursuant to Iowa Rule of Criminal Procedure 27(2)(a). She contended that her encounter with the undercover officers on May 22 constituted an "arrest." She asserted that because the State did not file a trial information until September 6, more

than forty-five days after her "arrest," she was entitled to a dismissal. *See id.*

The district court sustained defendant's motion to dismiss and the State appealed. We transferred the case to the court of appeals which affirmed the district court's ruling. The State sought further review, and we now consider the issues raised. Our review is for errors of law. *State v. Van Beek*, 443 N.W.2d 704, 705 (Iowa 1989).

II. *Definition of "arrest."* On this appeal, the State contends that the May 22 encounter between defendant and the undercover agents did not constitute an "arrest" for purposes of Iowa Rule of Criminal Procedure 27(2)(a). For the reasons that follow, we agree.

A. We have consistently maintained that the definition of "arrest" for purposes of rule 27(2)(a) is provided by Iowa Code sections 804.5 and 804.14. *State v. Van Beek*, 443 N.W.2d 704, 706 (Iowa 1989); *State v. Schmitt*, 290 N.W.2d 24, 26 (Iowa 1980). *See also State v. Ransom*, 309 N.W.2d 156, 158–59 (Iowa App.1981). Iowa Code section 804.5 provides that an "[a]rrest is the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." *See also State v. Bumpus*, 459 N.W.2d 619, 622 (Iowa), *cert. den.*, — U.S. —, 111 S.Ct. 563, 112 L.Ed.2d 570 (1990) (arrest occurs when officer takes suspect into custody). Furthermore, Iowa Code section 804.14 defines the "manner of making arrest," in part, as follows:

> The person making the arrest must inform the person to be arrested of the intention to arrest the person, the reason for arrest, and that the person making the arrest is a peace officer, if such be the case, and require the person being arrested to submit to the person's custody. . . .

■ It is undisputed that at no time during the May 22 meeting did the undercover agents inform defendant, in accordance with section 804.14, that she was under arrest. Indeed, they provided her with the specific alternative of *either* cooperating

with them as a confidential informant *or* being arrested. Defendant's subsequent decision to cooperate as a confidential informant necessarily precluded the existence of any "arrest." Thus, because there was no "arrest," there was nothing to trigger the forty-five day time period of rule 27(2)(a).

B. Defendant nevertheless argues that our decision in *Van Beek* supports the conclusion that she was "arrested" when the undercover agents came to her home on May 22. 443 N.W.2d 704. In that case, we held that the defendants' brief confinement constituted an "arrest" for purposes of rule 27(2)(a), despite the fact that no charges were filed against them and that they were "unconditionally released" approximately one hour after their confinement. *Id.* at 705–06. Defendant Johnson–Hugi implies that because she was not "unconditionally released" subsequent to the May 22 meeting, *i.e.*, because she agreed to be a confidential informant, *Van Beek* supports the conclusion that she was "arrested." We disagree.

In *Van Beek*, the arresting officer specifically informed the defendants that they were under arrest. *Id.* at 705. However, it is undisputed that defendant Johnson–Hugi was never informed at any time during the May 22 meeting that she was under arrest. *Cf. State v. Harvey*, 242 N.W.2d 330, 339 (Iowa 1976) (an arrest to be effective does not require formal words of arrest). In any event, merely because a defendant may be considered to have been "arrested" despite having been "unconditionally released" does not necessarily mean that if a defendant is "conditionally released," she must therefore be deemed "arrested." More specifically, the mere fact that defendant Johnson–Hugi became a confidential informant subsequent to the May 22 meeting does not mean that she had been "arrested." *Accord Ransom*, 309 N.W.2d at 159 (mere submission to authority is not sufficient to constitute an arrest). As outlined above, she had been presented with the alternative of either cooperating as a confidential informant or being arrested, and her decision to cooper-

ate as an informant necessarily precluded the possibility of there being an "arrest."

C. Notwithstanding the requirements of Iowa Code sections 804.5 and 804.14, defendant argues that the May 22 meeting constituted an "arrest" because any "reasonable person [in her situation] would have believed that he [or she] was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980). We disagree.

As an initial matter, we note that the language from *Mendenhall*, a plurality opinion, defined the circumstances under which a person is considered "seized" for purposes of the fourth amendment; it did not define what may constitute an "arrest." *Cf. Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968) (fourth amendment governs "seizures" of the person which may not eventuate in an "arrest" in traditional terminology). In any event, merely because a reasonable person in the same or similar circumstances would have believed he or she was not free to leave does *not* necessarily mean that there was in fact a "seizure" or an "arrest." *See California v. Hodari D.*, 499 U.S. ——, ——, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690, 698 (1991). It has been said that "an assertion of authority and *purpose to arrest* followed by submission of the arrestee constitutes an arrest." *Id.* at ——, 111 S.Ct. at 1551, 113 L.Ed.2d at 697 (quoting Perkins, *The Law of Arrest*, 25 Iowa L.Rev. 201, 206 (1940)) (emphasis supplied).

During the May 22 meeting between the undercover agents and defendant Johnson–Hugi, we do not believe the record shows that the agents had any "purpose to arrest," nor do we believe that any reasonable person could have believed otherwise. There was certainly no manifestation of a "purpose to arrest" as required by Iowa Code sections 804.5 and 804.14. And as stated above, defendant was presented with the specific alternative of *either* cooperating as a confidential informant *or* being arrested; her decision to cooperate necessarily precluded the possibility of there being an "arrest."

■ III. *Disposition.* Law enforcement authorities must be accorded latitude in procuring the non-volunteer assistance of private citizens to serve as confidential informants in combating crime. If every such action were deemed to be an "arrest" for purposes of rule 27(2)(a), the time within which authorities could use informants to obtain information would be substantially limited. We refuse to hamstring law enforcement authorities by such a rule. We therefore conclude as a matter of law that the May 22 meeting between the undercover agents and defendant Johnson–Hugi did not constitute an "arrest" for purposes of rule 27(2)(a). The district court erred in ruling to the contrary. Furthermore, her arrest on August 22, fifteen days before the State filed its trial information, was well within the parameters of the rule.

We have considered the parties' other contentions and find them without merit or unnecessary to discuss. Accordingly, we vacate the court of appeals decision. We reverse the judgment of the district court, which had ordered the dismissal of the State's prosecution, and remand for further appropriate proceedings.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND REMANDED.

All Justices concur except SNELL, J., joined by LAVORATO, J., who dissent.

SNELL, Justice (dissenting).

I respectfully dissent. On May 22, 1990, police officers offered the defendant, Debra Jo Johnson–Hugi, the following ultimatum: Either cooperate with them in the role of a confidential informant or be arrested and charged with delivering a controlled substance in violation of Iowa Code sections 204.206(4) and 204.401(1) (1989). She opted for the former, but was, nevertheless, charged with the stated offenses after the issuance of the officer's ultimatum. Because I believe the State's actions are violative of Iowa Rule of Criminal Procedure 27(2)(a), I would affirm the district court's dismissal of the pending charges and affirm the court of appeals.

In *State v. Van Beek*, 443 N.W.2d 704 (Iowa 1989), we concluded that "[i]n interpreting rule 27(2)(a), the manifest intent of the legislature, [must prevail] over the literal import of the words used." *Id.* at 706. In our analysis of legislative intent, we described the "evils the rule is designed to protect against" in the following way:

> The purpose of [rule 27(2)(a)] is to relieve one accused of a crime of ... *the anxiety of suspended prosecution,* if at liberty on bail, and to require courts and peace officers to proceed with the trial of criminal charges with such reasonable promptness as proper administration of justice demands.

*Id.* (emphasis added) (citing *State v. Allnutt,* 261 Iowa 897, 901, 156 N.W.2d 266, 268 (1968)). Defendant Johnson–Hugi's pressed recruitment as a confidential informant clearly subjected her to "the anxiety of suspended prosecution." She not only could be prosecuted at any time but had no assurance that the State would forego prosecution even if she were to make a good-faith effort to secure the evidence that the police sought. Indeed, the specter of renewed prosecution is the very tool used by the police to control the minds of all confidential informants for the duration of their service as an informant. Thus, while the "anxiety of suspended prosecution" may be a necessary evil in light of the need for confidential informants in modern-day law enforcement, the sound policy underlying rule 27(2)(a) requires that this period of uncertainty not be extended beyond the reasonable period of forty-five days.

The majority complains that, under this approach, "the time within which authorities could use informants to obtain information would be substantially limited." The specter of hamstringing law enforcement authorities is raised. I find this suggestion overblown. Law enforcement authorities could continue to use informants for whatever time period they deem appropriate. The only obligation facing law enforcement authorities would be to determine within the forty-five day time period whether their informant is capable and willing to provide the information that they

desire. If, within the forty-five day time period, enforcement authorities conclude that their informant is either unwilling or incapable of providing the sought-after information, they would be free to indict and prosecute. However, to the extent that the informant's performance was adjudged adequate throughout the forty-five day period, authorities would be precluded from reneging on their promise to forego institution of criminal proceedings. This approach follows our own case law and has the salutary effect of limiting the "anxiety of suspended prosecution" to the forty-five day period as specified in rule 27(2)(a) while at the same time insuring that law enforcement authorities honor their cooperation agreements with informants.

Finally, I find it significant that an application of fourth-amendment jurisprudence also leads to the conclusion that defendant Johnson–Hugi was subjected to an arrest as of the date on which the police officers issued their ultimatum. Rule 27(2)(a) and the fourth amendment share a kinship in that the fourth amendment's proscription on unreasonable seizures is designed "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Martinez–Fuerte*, 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116, 1126 (1976). An individual is "seized" within the meaning of the fourth amendment "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that [she] was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980). In addition, the arrest in which the seizure is effected must also involve "either physical force or, where that is absent, submission to the assertion of authority." *California v. Hodari D.*, 499 U.S. ——, ——, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690, 698 (1991).

Applying these principles to the facts of this case, it is clear that defendant Johnson–Hugi was subjected to a seizure. Obviously, she was not free to ignore the requests of the officers, since had she done so, they would have reinstituted criminal proceedings. The officer's assertion of their authority and defendant Johnson–Hugi's submission to it are also clearly evident from the beginning. After what the majority describes as a "brief discussion" and defendant's decision to cooperate, she was "patted down," her purse was searched, and she was "Mirandized." Defendant's suggestion to go to the Clear Lake police station was rejected; instead, she was taken to the Mason City highway patrol post. She was not allowed to drive her own car but had to ride in the officer's car. After being kept one-and-a-half to two hours, she wanted to leave because she was late for work but could not because she no longer had her own transportation. Requests to hurry so she could get to work were refused because "this is more important." She was not allowed to use the restroom except with a female agent accompanying her. Such was the nature of the "non-arrest" of defendant and her "voluntary" cooperation. To the extent that rule 27(2)(a) is designed to prevent "oppressive interference by enforcement officials with the privacy and personal security of individuals," we should construe the term "arrest" consistent with the United States Supreme Court's definition of a "seizure" for purposes of the fourth amendment.

The majority has settled upon an exceedingly formalistic definition of arrest that effectively allows enforcement authorities to establish the point of "arrest" by deciding when to utter the magical words, "you are under arrest." This interpretation of the term "arrest" subjects citizens, such as Debra Jo Johnson–Hugi, to the anxiety of indefinitely suspended prosecution while the State "employs" them in the role of confidential informant. In this case, defendant Johnson–Hugi was conscripted for 106 days before the State decided that her services were not valuable enough to forego prosecution any longer; then they indicted her. But even 1006 days would not be too long under the majority's rule to squeeze service from a defendant. The majority's approach is not necessary to the enforcement of our criminal code and does violence to the policy underlying Iowa Rule of Crim-

inal Procedure 27(2)(a). I would affirm the district court and the court of appeals decisions that called for a dismissal of the charges now pending against defendant Johnson–Hugi.