STATE of Iowa, Appellee,

v.

Shirley A. DELOCKROY, Appellant.

No. 95–1055.

Court of Appeals of Iowa.

Nov. 27, 1996.

Blair Bennet, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kimberly Griffith, Assistant County Attorney, for appellee.

Heard by HABHAB, P.J., and CADY and VOGEL, JJ.

CADY, Judge.

This appeal requires us to decide when an arrest occurred for purposes of the speedy indictment rule. We reverse the ruling of the district court and dismiss the trial information.

On October 29, 1993, at around 9:30 p.m., county law enforcement officers executed a

search warrant on a residence of John Smith and Shirley Delockroy near Hudson, Iowa. Smith and Delockroy were home at the time. The object of the search was drugs.

Officers entered the home with their weapons drawn after Smith initially resisted their request to execute the warrant. Smith and Delockroy were placed in handcuffs. After a period of time, Smith became cooperative and pointed out the location of the drugs. Officers found marijuana, drug paraphernalia and cash in the residence. The handcuffs were eventually removed.

After the drugs were found, Smith asked the officers what type of charges he was facing and inquired if there was anything he could do to help himself and his family. In response, an officer told him he faced charges of possession with intent to deliver and failure to possess a tax stamp. Smith was also informed he and Delockroy would be taken to the sheriff's office to discuss the matter. The discussion between the officer and Smith occurred in the living room of the residence. Delockroy was also in the living room at the time, but did not participate in the discussion.

At approximately 10:45 p.m., officers transported Smith and Delockroy to the sheriff's office at the county courthouse in separate police vehicles. Officers handcuffed Smith and Delockroy before placing them in the law enforcement vehicles, but later removed the handcuffs after arriving at the sheriff's office. Neither Smith or Delockroy were told by officers they were under arrest. The officers at the scene understood the two were taken to the sheriff's office to give statements.

Smith and Delockroy were placed in separate rooms at the sheriff's department and given *Miranda* rights. Smith soon offered to provide drug trafficking information to the officers in return for favorable treatment concerning the drugs found in the search. After obtaining approval from the county attorney, the officers entered into a cooperation agreement with Smith in exchange for favorable treatment. Under one term of the agreement, charges against Delockroy would be limited to simple possession of marijuana if Smith fully cooperated. Smith talked to Delockroy before finalizing the agreement.

Smith and Delockroy were released a few hours later. Smith executed a formal cooperation agreement on December 1, 1993.

The State filed a trial information against Delockroy on August 8, 1994. It charged her with possession of marijuana with intent to deliver. Delockroy filed a motion to dismiss. She claimed the information violated the speedy indictment rule.

The district court denied the motion following a hearing. It found Delockroy was not arrested on October 29 or October 30, 1993. The State stipulated there was probable cause to arrest Delockroy on October 29, but asserted the arrest never occurred.

Delockroy was found guilty of possession of marijuana. She was sentenced to a six-month suspended jail term.

■ Delockroy appeals. She claims the speedy indictment rule required the trial information to be dismissed because she was arrested on October 29. Our review is for errors at law. *State v. Davis*, 525 N.W.2d 837, 838 (Iowa 1994).

Iowa Rule of Criminal Procedure 27(2)(a) requires an indictment or information be dismissed if not filed within forty-five days after the arrest, absent good cause or waiver. *See State v. Davis*, 525 N.W.2d at 839. There is no claim of good cause or waiver by the State. The sole issue is whether Delockroy was arrested during the evening hours of October 29, 1993, or the early morning hours of October 30, 1993.

To determine whether an arrest has occurred for the purposes of Rule 27, we must first consider the statutes defining an arrest and the manner of making an arrest. *See State v. Schmitt*, 290 N.W.2d 24, 26 (Iowa 1980). Iowa Code section 804.5 defines an arrest as "taking a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." Iowa Code section 804.14 defines the manner of making an arrest to include:

The person making an arrest must inform the person to be arrested of the intention to arrest the person, the reason for arrest, and that the person making the arrest is a

peace officer, if such be the case, and require the person being arrested to submit to the person's custody. . . .

■■■ The Iowa statutes concerning arrest reveal the mere submission to authority does not constitute an arrest. *State v. Ransom*, 309 N.W.2d 156, 159 (Iowa App.1981). *See State v. Gathercole*, 553 N.W.2d 569 (Iowa 1996) (no defacto arrest under speedy indictment rule). Moreover, an arrest does not necessarily take place because a reasonable person in the same or similar circumstances would not believe he or she was free to leave. *State v. Johnson–Hugi*, 484 N.W.2d 599, 601 (Iowa 1992). An arrest requires "an assertion of authority and *purpose to arrest* followed by submission of the arrestee." *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690, 698 (1991) (quoting Rollin M. Perkins, *The Law of Arrest*, 25 Iowa L.Rev. 201, 206 (1940))).

The police officers testified, and the district court found, Delockroy was never told by police she was under arrest at any time during the evening or early morning hours. Thus, an arrest was not made in compliance with section 804.14. Instead, the police officers indicated Delockroy was transported to the courthouse following the search to be interviewed. Nevertheless, we believe an arrest can occur without the police specifically informing the arrestee of their intention to arrest.

■■■ Delockroy argues police had found drugs in her residence, had probable cause to arrest, placed her in handcuffs, transported her to the law enforcement center in a police vehicle, and held her in a room at the sheriff's office area of the courthouse for an extended period of time. She was able to leave the courthouse only after Smith negotiated the cooperation agreement.

The district court and the State placed great reliance on *Johnson–Hugi* to support the conclusion no arrest occurred. In that case, two undercover officers went to defendant's residence to purchase drugs. They had purchased drugs from the defendant on a prior occasion. After defendant refused to supply additional drugs, the officers revealed

their identity and offered defendant the alternative of cooperating as a confidential informant or being arrested for delivery of a controlled substance. The defendant chose to cooperate as a confidential informant. She was patted down, taken to law enforcement headquarters, and given her *Miranda* rights. After executing the necessary forms, she was returned to her residence by the officer.

The court rejected defendant's subsequent claim she had been arrested at her home. It found the police had no purpose to arrest and no reasonable person could have believed otherwise. *Johnson–Hugi*, 484 N.W.2d at 601. The critical point in the analysis centered on the alternative proposition police presented to defendant before any intrusive actions were taken. *Id.* The court concluded her decision to cooperate precluded the possibility of an arrest. *Id.* Thus, the police did not transport her to the station for the purpose of an arrest, but to complete paperwork concerning her decision to cooperate. It was a voluntary meeting with police, initiated by the defendant's decision to cooperate.

In the companion case involving Smith, we narrowly extended *Johnson–Hugi* to reject a claim of arrest. *State v. Smith*, 552 N.W.2d 163 (Iowa App.1996). We concluded Smith's own invitation to enter into a cooperation agreement made while Smith was still in his home and prior to any intrusive police action rendered Smith's subsequent transportation to the courthouse incidental to the later agreement. *Id.* at 166. Although the possibility of an arrest existed when Smith was taken from his home by police, the expectations of an agreement were sufficient to preclude a reasonable belief an arrest had taken place.

In this case, Delockroy had no assurances, and no control over her situation. Moreover, she never discussed or requested a cooperation agreement in lieu of an arrest. Unlike *Johnson–Hugi*, no decision was made which precluded the possibility of an arrest prior to transporting Delockroy to the sheriff's office. Unlike *Smith*, Delockroy was not seeking to negotiate a deal to preclude an arrest and there was no exchange between the officers and Delockroy to support a reasonable ex-

pectation her arrest would be delayed. We think these are critical distinctions, and it requires us to consider the totality of the facts and circumstances of the evening to determine if Delockroy was arrested.

■ We recognize the deputies did not necessarily arrest Delockroy when they placed handcuffs on her after entering the house. *See Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340, 351 (1981) ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."). However, after drugs were located on the premises, the State acknowledges probable cause existed to arrest Delockroy. Although police did not specifically inform Delockroy she was under arrest, they never told her she was not under arrest. *See Massachusetts v. Parker*, 402 Mass. 333, 339, 522 N.E.2d 924, 928 (1988) (no arrest occurred following search of residence when defendants voluntarily accompanied officers to the police station after officers explicitly informed defendants they were not under arrest). Moreover, there was no indication Delockroy had any choice but to go to the sheriff's office. *See United States v. Ceballos*, 812 F.2d 42, 48 (2d Cir.1987) (credible explanation by officers to defendant that he was not obligated to accompany them to the station would normally serve interests of law enforcement officers by defeating any claim custody has begun). There was no evidence the officers told Delockroy they only wanted her to go to their office to give a statement or wait for the outcome of Smith's negotiations.

In the absence of explicit statements by police, we must consider the remaining surrounding circumstances to determine whether an arrest occurred. In doing so, we look to determine if the facts reveal an assertion of authority and purpose to arrest, together with a submission of the arrestee. *Johnson–Hugi*, 484 N.W.2d at 601.

We conclude Delockroy was arrested during the encounter with police on October 29. Officers removed Delockroy from her house late at night in handcuffs, placed her in the back seat of a police vehicle with a cage separating the front seat, and transported her to the sheriff's office where they placed her in a room, alone, for a considerable period of time. She knew officers had found drugs in her residence and further knew she was facing drug charges. She was given *Miranda* rights. Under these circumstances, a reasonable person would believe an arrest had taken place. There was clearly an assertion of authority and an submission to authority. We also believe there was a purpose to arrest. The vague possibility at the time Delockroy was taken from her home that she might receive some type of favorable treatment does not transform her situation into an investigatory detention or a voluntary meeting with police. Moreover, although there was evidence Smith wanted to negotiate a deal, there was no evidence Delockroy also wanted to work out a deal or was a necessary party to the discussions between Smith and the State. Without more, we refuse to extend *Johnson–Hugi* to include a potential beneficiary of a cooperation agreement sought by a third party.

The State acknowledges there was probable cause to arrest Delockroy and the officers further acknowledged Delockroy was not free to leave. Although the officers never specifically informed Delockroy she was under arrest, that information was conveyed to her by the circumstances of the evening. The totality of the circumstances reveal the encounter between the officers and Delockroy was too intrusive, as a matter of law, to be anything but an arrest.

■ We reject the argument by the State that dismissal of the charges against Delockroy is not compatible with the purposes of the speedy indictment rule. The focus of the speedy indictment rule is to relieve an accused of the anxiety associated with a suspended prosecution and provide reasonably prompt administration of justice. *State v. Allnutt*, 261 Iowa 897, 901, 156 N.W.2d 266, 268 (1968). The State asserts Delockroy, unlike a person who has been arrested but not charged, had no reason to experience anxiety because she was aware under the agreement she would at least face a simple possession charge. The anxiety of a suspended prosecution, however, is not limited

to the type of charge, but includes the timing of charge. *State v. Davis,* 525 N.W.2d at 840. The speedy trial rule was activated by the arrest, and obligated the State to bring charges within forty-five days.

If law enforcement desire to utilize cooperation agreements after an arrest, and to delay the filing of charges pending completion of the agreement, a waiver of the speedy indictment rule can be requested as a part of the cooperation agreement. Without a waiver or good cause, the time limitation imposed by the rule must be met. Moreover, if there is no purpose by police to arrest a person under the circumstances presented in this case, justice would be served by specifically informing the person no arrest is being made and there is no obligation to accompany police to the station.

We conclude Rule 27(2)(a) mandates dismissal of the trial information. Delockroy was arrested on October 29, and her subsequent release from custody following the cooperation agreement by Smith does not release the State from its obligation to timely file an indictment or information. *State v. Davis,* 525 N.W.2d at 840–41. The State never argued good cause or waiver to excuse the delay, and we can find no facts in the record to support any such justification. Dismissal is mandatory.

We reverse the conviction and remand the case with directions that the trial information be dismissed.

**REVERSED AND REMANDED.**