**IN THE COURT OF APPEALS OF IOWA**

No. 15-1992
Filed January 11, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TASHA NICOLE COMSTOCK,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Bremer County, Peter B. Newell,

District Associate Judge.

A defendant appeals her conviction for third-degree theft on speedy-

indictment grounds. **REVERSED AND REMANDED FOR DISMISSAL.**

Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Tasha Nicole Comstock appeals her conviction for theft in the third degree on speedy-indictment grounds. Comstock contends the State violated Iowa Rule of Criminal Procedure 2.33(2)(a) by waiting 269 days after her initial appearance to file its trial information. Because we find Comstock was arrested when she appeared in court and waived a preliminary hearing and the State did not file its trial information within forty-five days of that appearance, we reverse Comstock's conviction and remand for dismissal of the trial information.

**I.     Facts and Prior Proceedings**

On August 23, 2005, a sergeant with the Waverly Police Department filed a criminal complaint accusing Comstock of third-degree theft. The complaint alleged Comstock had presented four checks written on a closed bank account to a Waverly Wal-Mart in May 2005. A magistrate issued a summons ordering Comstock to appear and answer the theft charge, and Comstock did so on October 14. Comstock also applied for counsel and waived a preliminary hearing at her October 14 appearance. After Comstock signed an agreement providing she would not leave Iowa without the written consent of the court, would keep her attorney apprised of her whereabouts, and would personally appear in court for all required hearings, the court released her on her own recognizance without bond.

Nearly nine months later, on July 10, 2006, the State filed a trial information charging Comstock with aggravated-misdemeanor theft, in violation of Iowa Code sections 714.1 and 714.2 (2005). Comstock failed to appear for

her arraignment, and the court issued a warrant for her arrest on August 7, 2006. She was not arrested on the outstanding warrant until January 2015.

On March 27, 2015, Comstock filed a motion to dismiss, alleging a speedy-indictment violation. In resistance, the State did not attempt to show good cause for the delay. Instead, the State cited *State v. Mahan*, 483 N.W.2d 1, 1–2 (Iowa 1992), in support of its contention Comstock had not been arrested before the State filed its trial information and, because no arrest occurred, the speedy-indictment rule had not been triggered. Adopting the State's rationale, the district court denied Comstock's motion to dismiss. On November 18, Comstock waived her right to a jury trial and agreed to a trial on the minutes of testimony. Following trial, the court found Comstock guilty.

## II.  Scope and Standard of Review

We review the district court's interpretation of rule 2.33(2)(a) for correction of legal error.[1]  *State v. Penn-Kennedy*, 862 N.W.2d 384, 386 (Iowa 2015).  If the fact-findings are supported by substantial evidence, we are bound by them.  *Id.*

---

[1] The Federal and Iowa Constitutions both guarantee a general right to a speedy trial. *See* U.S. Const. amend. VI; Iowa Const. art. I, § 10.  In addition, intentional pre-indictment delay by the State implicates a defendant's right to due process.  *See* U.S. Const. amend. V; Iowa Const. art. I, § 10.  Although Comstock mentions a violation of her constitutional rights on appeal, she does not make any specific argument on this issue.  *See EnviroGas, L.P. v. Cedar Rapids/Linn Cty. Solid Waste Auth.*, 641 N.W.2d 776, 785 (Iowa 2002) (holding random reference to a claim of error, without elaboration or citation to authority, is inadequate to raise an issue on appeal).  And, as the State observes, Comstock failed to preserve error on a constitutional challenge because she failed to raise that claim before the trial court.  *See Meier v. Senecaut*, 641 N.W.2d 532 537 (Iowa 2002) ("It is fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").  Therefore, to the extent Comstock raises a constitutional claim, we decline to address it.

## III. Analysis

Our legislature prefaced the speedy-indictment rule with a broad policy declaration: "It is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties." Iowa R. Crim. P. 2.33(2). The substance of the speedy-indictment rule immediately follows:

> When an adult is arrested for the commission of a public offense . . . and an indictment is not found against the defendant within [forty-five] days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown or the defendant waives the defendant's right thereto.

Iowa R. Crim. P. 2.33(2)(a); *see also* Iowa R. Crim. P. 2.5(5) ("The term 'indictment' embraces the trial information, and all provisions of law applying to prosecutions on indictments apply also to informations . . . ."). The speedy-indictment rule serves to "relieve an accused of the anxiety associated with a suspended prosecution and provide reasonably prompt administration of justice." *State v. Wing*, 791 N.W.2d 243, 246 (Iowa 2010) (quoting *State v. Delockroy*, 559 N.W.2d 43, 46 (Iowa Ct. App. 1996)). Moreover, it helps prevent the serious harm that arises from the "impairment of the accused's defense due to diminished memories and loss of exculpatory evidence." *Id.* at 247 (quoting *State v. Olson*, 528 N.W.2d 651, 654 (Iowa Ct. App. 1995)). Consistent with the nature of these policy considerations, a violation of the speedy-indictment rule results in an "absolute dismissal, . . . prohibiting reinstatement or refiling of an information or indictment charging the same offense." *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012) (quoting *State v. Abrahamson*, 746 N.W.2d 270, 273 (Iowa 2008)).

In this case, we are asked to decide whether a person who is issued a citation and summons by a magistrate has been "arrested" within the meaning of rule 2.33(2)(a) when—in compliance with the summons—that person makes an initial appearance in court and waives a preliminary hearing. To guide our interpretation, we examine the statutory definitions of "arrest" and the line of cases establishing the constructive-arrest doctrine under rule 2.33(2)(a).

In the late 1970s, our legislature rewrote the speedy-indictment rule to start the clock at the time of arrest. *See Wing*, 791 N.W.2d at 247 (discussing history of the speedy-indictment rule). Before that rewrite, the speedy-indictment period commenced when a person was "held to answer" for a public offense, a phrase "defined to mean being held to answer by a preliminary examination or waiver of same." *See State v. Schmitt*, 290 N.W.2d 24, 27 (Iowa 1980) (comparing "held to answer" language with "arrested").

Cases immediately following the legislature's revision construed the term "arrest" narrowly, limited to the definitions in Iowa Code sections 804.5,[2] 804.14,[3] and 805.1(4).[4] *See id.* at 26–27 (citing section 804.5 and defining "arrested" as "being physically taken into custody in the manner authorized by law"); *see also*

---

[2] Section 804.5 provides: "Arrest is the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody."

[3] Section 804.14(1) provides:

> A person making an arrest must inform the person to be arrested of the intention to arrest the person, the reason for arrest, and that the person making the arrest is a peace officer, if such be the case, and require the person being arrested to submit to the person's custody, except when the person to be arrested is actually engaged in the commission of or attempt to commit an offense, or escapes, so that there is no time or opportunity to do so.

[4] Section 805.1(4) provides: "The issuance of a citation in lieu of arrest shall be deemed an arrest for the purpose of the speedy indictment requirements of rule of criminal procedure 2.33(2)(a) . . . ."

*Mahan*, 483 N.W.2d at 1–2 (limiting "constructive arrest doctrine" to issuance of a citation in lieu of arrest under Iowa Code section 805.1(4)). But in 2010, the court adopted the current framework, holding a defendant has been arrested for speedy-indictment purposes when "a reasonable person in the defendant's position would have believed an arrest occurred, including whether the arresting officer manifested a purpose to arrest." *See Wing*, 791 N.W.2d at 249.

Comstock argues she was officially arrested when she "submitted to the jurisdiction of the court" on October 14, 2005, at the time of her initial appearance. Citing *Wing*'s reasonable-person standard, she contends:

> A reasonable person placed in the same situation would assume that one had been "arrested" for a charge when a magistrate or judge informs them of what they have been charged with and that person is required to sign and acknowledge rules of release from "custody" and face further contempt findings should she not follow the "orders of the court."

The State counters Comstock was never arrested, relying on *Mahan*, in which the court found the issuance of a citation by a magistrate was not a constructive arrest under our speedy-indictment rule. *See* 483 N.W.2d at 2.

After examining the case law defining the scope of an arrest under the speedy-indictment rule, we find the situation before us does not fit neatly within the established framework. The circumstances here differ from *Wing*; we are not deciding if police interaction with Comstock amounted to an arrest, rather we are concerned about her submission to custody at the time of the initial appearance. Under the rule's former "held to answer" language, the October 2005 hearing—in which Comstock appeared in court and waived a preliminary hearing—would have triggered the speedy-indictment rule and the trial information the State filed

269 days later would have been untimely. *See State v. Montgomery*, 232 N.W.2d 525, 526–27 (Iowa 1975). We conclude the legislature intended the same result under the "arrested" language in the present version of our speedy-indictment rule.

The definition of arrest contemplates that "the taking of a person into custody" may be accomplished either by "restraint of the person" or by "the person's submission to custody." *See* Iowa Code § 804.5. An arrest requires "an assertion of authority and *purpose to arrest* followed by submission of the arrestee." *State v. Johnson-Hugi*, 484 N.W.2d 599, 601 (Iowa 1992) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

Here, the State asserted its authority over Comstock by issuing a summons to appear in court served by a Floyd County deputy sheriff. Attached to the summons was the criminal complaint signed by a peace officer. The summons notified Comstock that failure to appear may constitute a crime. The summons also cited Iowa Code section 804.1, which provides, "If the person named in the citation is actually served as provided herein and willfully fails without good cause to appear as commanded by the citation, the person shall be guilty of a simple misdemeanor and the magistrate may issue a warrant of arrest for the offense originally charged."

Comstock submitted to custody by appearing in court and answering the charge against her. According to the express terms of her signed "agreement for release upon own recognizance," the magistrate only released Comstock from custody after she agreed to certain conditions. Accordingly, we find Comstock

was "arrested" on October 14, 2005, either under section 804.5 or, as Comstock asserts, under *Wing*'s reasonable-person standard.

This interpretation is consistent with the overall broadening of protections that resulted from the legislature's use of the term "arrest" in our speedy-indictment rule. Generally, the term "arrest" has the effect of triggering the rule earlier than under the former "held to answer" language. As the court explained in *Penn-Kennedy*:

> Normally, the date of an arrest and the date of prosecution follow hand in hand. Thus, even though the date of arrest triggers the requirement to file an indictment, the arrest date is usually very close in time to the date that commences the prosecution. . . . The period of time between the arrest and the initial appearance normally must not exceed twenty-four hours.

862 N.W.2d at 388. But as recognized in *Wing*, sometimes an arrest may occur much sooner than twenty-four hours before a court appearance, and in those situations, the speedy-indictment rule may be triggered weeks, or even months, earlier than under the previous rule. *See* 791 N.W.2d at 252–53 (finding arrest occurred five months before filing of criminal complaint); *see also Penn-Kennedy*, 862 N.W.2d at 388–89 (describing situation in which "a person reasonably believes a warrantless arrest has occurred during an encounter with police, while police assume the encounter ultimately ended without an arrest and with the release of the person from police custody without being taken before a magistrate for the initial appearance" as triggering speedy-indictment rule). This overall expansion in protection further reinforces our determination Comstock's initial appearance and waiver of a preliminary hearing were sufficient to trigger the speedy-indictment rule.

Moreover, this holding best effectuates the policy considerations underpinning the speedy-indictment rule. The manner in which Comstock submitted to custody—following the magistrate's issuance of a citation and summons—did not diminish the speedy-indictment policy concerns, such as the importance of relieving the anxiety associated with a suspended prosecution and of providing reasonably prompt resolution of criminal charges that arose after Comstock submitted to the authority of the court and answered to the criminal charge against her. *See Wing*, 791 N.W.2d at 246.

Finally, we disagree with the State that *Mahan* controls our resolution of this matter. The *Mahan* court determined a citation issued by a magistrate was not a constructive arrest under our speedy-indictment rule but, because the trial information was filed less than forty-five days after the defendant's initial court appearance, did not reach the issue of whether the defendant's initial court appearance could trigger the rule. *See* 483 N.W.2d at 2. Our holding today does not disturb this determination; it simply reaches the question left unanswered in *Mahan*.[5]

Because the State did not file its trial information within forty-five days of Comstock's October 2005 hearing and failed to show good cause for the delay, we reverse Comstock's conviction and remand to the district court for dismissal.

**REVERSED AND REMANDED FOR DISMISSAL.**

---

[5] We recognize some language in *Mahan* supports the State's position. *See, e.g.*, 483 N.W.2d at 1 ("The problem that has arisen in the present case stems from the fact that the defendant never was arrested prior to the filing of the trial information."). But that language is dicta and not essential to *Mahan*'s holding. Moreover, we are skeptical of *Mahan*'s continued vitality following *Wing*, 791 N.W.2d at 249.