STATE of Iowa, Appellant,

v.

Michael Louis DENNISON, Appellee.

No. 97–404.

Supreme Court of Iowa.

Nov. 26, 1997.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Thomas Mullin, County Attorney, and Brigit M. Barnes, Assistant County Attorney, for appellant.

Jack A. Faith, Sioux City, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

PER CURIAM.

The State appeals the district court's dismissal of the defendant's operating-while-intoxicated (OWI) charge on speedy indictment grounds. The issue before us is whether the defendant was "arrested" for purposes of the speedy indictment rule after law enforcement officers tested him to determine whether he was under the influence of alcohol and/or drugs. If the defendant was arrested at that time, the district court properly dismissed the trial information under Iowa Rule of Criminal Procedure 27(2)(a). We find he was not and reverse the district court's dismissal of the trial information.

I. *Background Facts and Proceedings.*

On April 6, 1996, at approximately 2:30 p.m., Officer Trobaugh saw the defendant, Michael Dennison, driving a vehicle into a parking lot. Trobaugh knew Dennison's driver's license was revoked. He approached Dennison, spoke with him, noticed an open can of beer in his car, and smelled a slight odor of an alcoholic beverage and a very strong odor of marijuana coming from him. At approximately 2:35 p.m., the officer informed Dennison that he was under arrest for driving while his license was revoked and open container. Trobaugh asked Dennison whether he had been drinking or smoking marijuana, and Dennison indicated he had not. Trobaugh handcuffed Dennison, placed him in his patrol car to await a back-up officer, and read him his *Miranda* rights. While in the patrol car, Trobaugh requested that Dennison perform the horizontal gaze nystagmus test and submit to a preliminary breath test (PBT). The PBT result was .04. Due to the smell of marijuana, the officer requested a drug recognition expert (DRE)[1] meet him at the jail to determine whether Dennison was under the influence of a drug other than alcohol.

At the jail, Trobaugh escorted Dennison to the alcohol safety action project office (ASAP office), rather than the booking room. There, Dennison voluntarily submitted to a series of tests[2] administered by the DRE, deputy James Bauerly. Bauerly invoked implied consent, and Dennison gave a urine sample, which was sent to the Division of Criminal Investigation (DCI) for testing. Although not free to leave because he was arrested on the other charges, Dennison was not required to participate in the tests. After completing the testing, Bauerly believed Dennison was under the influence of marijuana; however, he did not charge him with OWI because he did not have the urine test result. Bauerly believed the test result would not be returned for six or eight weeks. The estimated time of detention for the OWI testing was approximately fifty-five to sixty-five minutes.

Following the testing, Dennison was booked for driving while revoked and open container, but not for OWI.

On June 28, 1996, Bauerly received the toxicology report, showing a positive test result for marijuana. On July 16, 1996, deputy Bauerly filed a complaint and affidavit charging Dennison with second-offense OWI. *See* Iowa Code § 321J.2 (1995). Dennison was

---

1. A DRE is an officer who is certified to evaluate whether an individual is under the influence of drugs or a combination of drugs and alcohol. A DRE is also trained to determine what type of drug or drugs the individual may have taken.

2. The tests included standardized field sobriety tests, a Romberg balance test, a finger-to-the-nose test, and a vertical nystagmus test, as well as recording Dennison's blood pressure, pulse, temperature, and pupil size.

arrested on July 26, 1996.[3] The State filed the trial information on July 31, 1996.

On October 24, 1996, Dennison filed a motion to dismiss, arguing the OWI arrest occurred on April 6, 1996, and the speedy indictment rule was violated because the trial information was not filed until July 31, 1996. Following a hearing, the court sustained Dennison's motion and dismissed the trial information. Relying on *State v. Davis*, 525 N.W.2d 837 (Iowa 1994), it determined the OWI arrest occurred on April 6, 1996, and the trial information was not filed within the required forty-five days.

The State appealed.

## II. *Contentions of the Parties.*

The State argues that on April 6 Dennison was lawfully arrested on the driving-while-revoked and open-container charges, but the officers were only investigating the OWI charge. It contends Dennison's detention for purposes of testing did not constitute a formal arrest or a de facto arrest and did not trigger the speedy indictment rule.

Dennison contends he was arrested for OWI on April 6, and *Davis* mandates the dismissal of the trial information because it was not filed until July 31.

## III. *Applicable Law.*

■ This court's review of a district court's interpretation of Iowa Rule of Criminal Procedure 27(2)(a) is for errors at law. *Davis*, 525 N.W.2d at 838.

### A. *The Speedy Indictment Rule & Definition of "Arrest."*

Iowa Rule of Criminal Procedure 27(2)(a) states:

> When an adult is *arrested* ... and an indictment is not found against him within forty-five days, the court must order the prosecution dismissed, unless good cause

to the contrary is shown or the defendant waives his right thereto.

(Emphasis added.)

■ The term indictment used in this rule includes trial information. Iowa R.Crim. P. 5(5); *State v. Schuessler*, 561 N.W.2d 40, 41 (Iowa 1997). If the State fails to comply with this forty-five-day mandate and no good cause or waiver exception applies, the prosecution is barred and the trial information must be dismissed. *See* Iowa R.Crim. P. 27(2)(a). The State does not claim an exception exists in this case; therefore, the sole issue is when was Dennison arrested. The public policy behind the speedy indictment rule is clearly incorporated within rule 27(2): "It is the public policy of [this state] that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties."

■ The definition of "arrest" for purposes of rule 27(2)(a) is governed by the general law of arrest provided in Iowa Code chapter 804, specifically Iowa Code sections 804.5 and 804.14. *State v. Johnson–Hugi*, 484 N.W.2d 599, 600 (Iowa 1992). This is so because rule 27(2) and those sections were enacted together. *State v. Schmitt*, 290 N.W.2d 24, 26 (Iowa 1980).

Section 804.5 provides: "Arrest is the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." In relevant part, section 804.14, entitled "Manner of making arrest," reads:

> The person making the arrest must inform the person to be arrested of the intention to arrest the person, the reason for arrest, and that the person making the arrest is a peace officer, if such be the case, and require the person being arrested to submit to the person's custody, ....

■ Prior cases are also helpful to further sculpt the definition of "arrest." It has been held that mere submission to authority

---

**3.** Dennison objected to several documents included by the State in the appendix. The State has conceded that this court should not consider those challenged documents, except for the warrant for arrest and return. We honor the State's concession and agree that we may consider the warrant and return as they are part of the court file. *See* Iowa R.App. P. 10; *State v. Doe*, 227 Iowa 1215, 1220, 290 N.W. 518, 521 (1940).

is not sufficient to constitute an arrest. *State v. Ransom,* 309 N.W.2d 156, 159 (Iowa App.1981). However, "'an assertion of authority and purpose to arrest followed by submission of the arrestee constitutes an arrest.'" *Johnson–Hugi,* 484 N.W.2d at 601 (quoting *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690, 697 (1991) (quoting Rollin M. Perkins, *The Law of Arrest,* 25 Iowa L.Rev. 201, 206 (1940))). The court looks to whether the officers had a "purpose to arrest" or whether a reasonable person would have believed otherwise. *Id.*

■ Additionally, although the use of formal words of arrest are not required to effectuate an arrest, *see State v. Harvey,* 242 N.W.2d 330, 339 (Iowa 1976), it is a factor to consider. *See* Iowa Code § 804.14; *Johnson–Hugi,* 484 N.W.2d at 600; *State v. Delockroy,* 559 N.W.2d 43, 46 (Iowa App.1996). This court has also rejected the contention that a de facto arrest triggers the speedy indictment time. *State v. Gathercole,* 553 N.W.2d 569, 573 (Iowa 1996).

■ Furthermore, the lack of booking or filing of charges does not necessarily nullify an arrest. *Schmitt,* 290 N.W.2d at 26. Whether the individual was handcuffed also has been considered by the court in determining whether an arrest has occurred. *See Davis,* 525 N.W.2d at 839; *Schmitt,* 290 N.W.2d at 26.

■ What can be gleaned from these cases is that the question of whether a defendant was "arrested" is determined on a case-by-case basis. There is no bright-line rule or test. These basic principles assist us, but are not determinative.

### B. "Arrested" for OWI Purposes.

■ We have previously stated an individual's detention by an officer for the purposes of performing field sobriety tests does not rise to the level of custody, but is merely detention for investigative purposes. *State v. Krebs,* 562 N.W.2d 423, 426 (Iowa 1997). In *Krebs* this court determined that a request

for counsel made during field sobriety tests was premature under section 804.20 because at that point the defendant was not under arrest or "restrained of [his] liberty for any reason whatever." 562 N.W.2d at 426.

■ Furthermore, the invocation of implied consent procedures does not require an arrest if the situation qualifies under one of the conditions set forth in Iowa Code section 321J.6(1)(b)-(f). *See also State v. Brundt,* 356 N.W.2d 575, 576 (Iowa 1984) (interpreting Iowa Code § 321B.4 (1983)). In *State v. Brundt,* defendant was involved in an accident and taken to the hospital. 356 N.W.2d at 575. At the hospital, an officer requested the withdrawal of defendant's blood pursuant to implied consent procedures for unconscious persons. *Id.* Defendant was later charged with OWI, and he moved to dismiss the trial information based upon speedy indictment grounds. *Id.* Defendant argued he was constructively arrested on the date his blood sample was taken. *Id.* at 576. We determined that, pursuant to Iowa Code section 321B.4 (1983), an arrest was not required prior to invoking implied consent procedures because defendant had been in a motor vehicle accident resulting in personal injury, and there was substantial evidence supporting the trial court's decision that defendant was not arrested on that date. *Id.*

Similarly, the situation in the present case did not require an arrest because there were reasonable grounds for the officer to believe Dennison was operating a motor vehicle in violation of section 321J.2, the PBT result was less than .10, and the officer had reasonable grounds to believe Dennison was under the influence of a drug other than alcohol, or a combination of alcohol and another drug. Iowa Code section 321J.6(1), our current statute and successor to section 321B.4, allows a law enforcement officer to request chemical testing in situations where the officer has reasonable grounds to believe an individual may be under the influence of a drug other than alcohol or a combination of alcohol and another drug.[4] An arrest is not

---

4. Section 321J.6(1) reads in relevant part:
The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of sec-

required prior to invoking implied consent procedures in such circumstances. *See* Iowa Code § 321J.6(1). Therefore, because the statute allows a police officer to request a chemical test without placing the individual under arrest, limited detention for purposes of obtaining that chemical test, including transportation to the jail or other facility, is necessary and reasonable.

### C. The Davis Case.

Dennison and the trial court relied upon *State v. Davis,* 525 N.W.2d 837 (Iowa 1994), to support the dismissal of the trial information. In *Davis,* the officer arrested Davis for OWI on April 9, 1993, took him to the jail, read him the implied consent advisory, transported him to the hospital for the withdrawal of a blood sample, completed the citation and complaint for OWI, and turned him over to the jailer who "booked" him. *Davis,* 525 N.W.2d at 838. After consulting with a supervisor, the officer retrieved the citation and complaint and released Davis. *Id.* The complaint and citation were filed after the blood test results were returned. *Id.* The State filed the trial information on June 15, 1993. *Id.* On appeal from the dismissal of the trial information on speedy indictment grounds, the State conceded Davis had been arrested on April 9. *Id.* at 839.

We noted that Davis' situation easily corresponded to the definition of arrest: he was handcuffed for a substantial period, booked, and in custody for two hours. *Id.* We then concluded an officer could not "unarrest" a defendant to preclude the running of the speedy indictment deadline. *Id.* at 841. Strong public policy reasons supported this outcome: (1) allowing officers to unarrest a defendant would permit them to arrest an individual on insufficient or questionable evidence and then, at their convenience, gather enough evidence to support the filing of a trial information; (2) the test result was available within the forty-five-day period; (3) an arrest is a serious matter and should not be done without probable cause; (4) allowing an "unarrest" abuses citizens' rights as defendants remain anxious as to when "the other shoe will drop"; and (5) Davis was not put in the same position as a person under investigation, but not charged with a crime, because the arrest was reported in the paper. *Id.* at 840.

### IV. Was Dennison "Arrested" for Purposes of Speedy Indictment on April 6?

We believe *Davis* is distinguishable from the situation presently before us. Our focus in *Davis* was on the "unarresting" of an individual and the issue of arrest was conceded. Dennison argues *Davis* is controlling because the same policy reasons are clearly at issue. In certain respects, Dennison's position has some appeal. A person detained for field sobriety tests and implied consent procedures will likely remain anxious as to if and when "the other shoe will drop." *See Davis,* 525 N.W.2d at 840; *Johnson–Hugi,* 484 N.W.2d at 602 (Snell, J., dissenting). Additionally, the State should not be allowed to "sit" on evidence or file a trial information at its leisure or convenience without regard to a defendant's right to a speedy indictment. *See Davis,* 525 N.W.2d at 840.

However, other policy considerations substantially outweigh these concerns. Unlike *Davis,* the test result here was not returned within the forty-five-day period. The DRE knew the test result would not be available for six to eight weeks and he wanted all of the evidence to decide whether Dennison should be charged. In fact, the drug test result was not received by the deputy until June 28, approximately twelve weeks after the initial detention.

Additionally, the purpose of the speedy indictment rule is to ensure a fair trial for

---

tion 321J.2, *and if any* of the following conditions exist:

    *a.* peace officer has lawfully placed the person under arrest for violation of section 321J.2.

    . . . .

    *f.* The preliminary breath screening test was administered and it indicated an alcohol concentration of less than 0.10 and the peace officer has reasonable grounds to believe that the person was under the influence of a drug other than alcohol or a combination of alcohol and another drug.

(Emphasis added.)

*both* parties. Iowa R.Crim. P. 27(2). The test result is not only necessary for the State to prove the actual presence of drugs in a defendant's system, but is also important as potentially exculpatory evidence for the defense.

 Similarly, it is beneficial for both the State and the defendant for the officer to refrain from making an arrest and issuing a citation for a violation for which the most crucial evidence is not available. Peace officers should not arrest individuals on insufficient evidence. *Davis,* 525 N.W.2d at 840. If a defendant is arrested and charged with a crime, and that charge is later dismissed based upon a test result, it is inevitable the defendant will have suffered some adverse consequences from the arrest, such as enduring booking procedures, possible incarceration awaiting initial appearance, bond or release requirements, court appearances, expenditures for legal representation, and publication of the arrest in the newspaper.

In this case, we find it significant that the officers did not issue a citation or complaint charging Dennison with OWI on April 6, the detention was for OWI testing, Dennison was detained for investigative purposes for a relatively short period of time, and Dennison was lawfully arrested on other charges. Clearly, his arrest on the other charges did not preclude the State from filing separate charges arising out of the same incident or episode after the forty-five-day period had expired. *See State v. Lies,* 566 N.W.2d 507, 508–09 (Iowa 1997).

We believe this case is more akin to *Brundt* because the officers were investigating a possible OWI. *See Brundt,* 356 N.W.2d at 576. We find the officers had the authority to request field sobriety tests and invoke implied consent procedures without placing Dennison under arrest. *See id;* Iowa Code § 321J.6(1). The limited detention necessary to transport Dennison to the ASAP office and to conduct the tests to determine whether he was under the influence of drugs was incidental to the investigation, and did not constitute an arrest.

## V. *Conclusion*

We have considered all arguments presented by the parties, whether or not directly addressed. We conclude Dennison was not "arrested" for purposes of the speedy indictment rule on April 6, but was detained for investigative purposes. Following the receipt of the positive drug test for marijuana, Dennison was arrested on July 26. The trial information was filed on July 31. Therefore, the speedy indictment rule was not violated. We reverse the district court order dismissing the trial information, and remand the case for further proceedings.

**REVERSED AND REMANDED.**