**IN THE COURT OF APPEALS OF IOWA**

No. 13-1615
Filed September 17, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOHN PENN-KENNEDY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Todd A. Hensley, District Associate Judge.


        John Penn-Kennedy appeals the judgment and sentence entered upon his conviction of operating while intoxicated following a stipulated bench trial. **REVERSED AND REMANDED.**



        Robert Tiefenthaler of Tiefenthaler Law Office, P.C., Sioux City, for appellant.

        Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney General, Patrick Jennings, County Attorney, and Jacklyn Fox, Assistant County Attorney, for appellee.


        Considered by Danilson, C.J., and Vogel and Bower, JJ.

**DANILSON, C.J.**

John Penn-Kennedy appeals the judgment and sentence entered upon his conviction of operating while intoxicated following a stipulated bench trial. He contends the district court erred in denying his motion to dismiss for lack of speedy indictment. We reverse and remand with instructions to grant the motion to dismiss.

**I. Background Facts and Proceedings.**

On January 19, 2012, officers responded to a 911 dispatch where the caller stated he worked for the city, was at the Horizon, and there was a guy in the parking lot that "can't even walk," had gotten in a car, and was getting ready to leave. When police responded, John Penn-Kennedy was sitting behind the steering wheel in a vehicle with the ignition on and the engine running. According to Penn-Kennedy's motion to dismiss, he was arrested for operating while intoxicated (OWI) on January 19, 2012, and therefore the trial information charging him with OWI filed on August 7, 2012, was untimely under Iowa Rule of Criminal Procedure 2.33(2)(a).[1] The State resisted, contending Penn-Kennedy was arrested for public intoxication on January 19, and the subsequent trial information for OWI was timely filed.

Following a hearing at which testimony was presented, the district court made the following findings:

---

[1] Rule 2.33(2)(a) provides: "When an adult is arrested for the commission of a public offense, . . . and an indictment is not found against the defendant within 45 days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown . . . ."

1. That on January 19, 2012, Officer [Jeffrey] Harstad was dispatched to the Horizon Restaurant due to a 911 call received by the Communications Center.

2. That the 911 caller indicated he saw a guy at the Horizon who was stumbling around, that couldn't walk, that was getting into a car, and that was probably getting ready to leave.

3. That Officer Harstad arrived at the Horizon Restaurant at approximately 2:06 a.m.

4. That Officer Harstad observed that Defendant smelled of alcohol, had red watery eyes, and that he had a "sway" to his person.

5. That Officer Harstad performed the [horizontal gaze nystagmus] HGN test on the Defendant who failed said test scoring 6 of 6 points.

6. That Officer Harstad administered a [preliminary breath test] PBT to Defendant which registered a .153 BAC.

7. That Officer Harstad did not believe the area they were at was conducive to conducting further field sobriety tests.

8. That Defendant was arrested at the scene for Public Intoxication and taken to the Law Enforcement Center.

9. That Defendant was not advised at the time as to what charge he was being arrested for.

10. That Defendant fell down in the alleyway outside the [law enforcement center] LEC and injured his foot.

11. That Defendant was taken to the Emergency Room at Mercy Medical Center.

12. That Defendant was treated for his injury.

13. That Officer Harstad invoked Implied Consent at approximately 3:05 a.m.

14. That Officer Harstad requested a blood sample from Defendant at approximately 3:09 a.m.

15. That Defendant then requested an opportunity to and was allowed to call his attorney, Mr. Tiefenthaler, who he spoke to for an extended period of time on the phone.

16. That at around 4:00 a.m. Mr. Tiefenthaler arrived at the hospital and spoke with the Defendant for five minutes or less.

17. That Defendant refused to give a blood specimen but agreed to provide a urine sample.

18. That a urine sample (the first void) was collected at approximately 4:10 a.m.

19. That Officer Harstad made no effort to collect a second void.

20. That Defendant was booked into jail on the charge of Public Intoxication.

Based upon these findings, the district court rejected Penn-Kennedy's argument that a reasonable person in his situation on January 19 would have believed he was under arrest for OWI. The court concluded,

> Based on the statements of the 911 caller and his personal observations of Defendant, Officer Harstad had probable cause to arrest Defendant for Public Intoxication. Defendant was booked into the jail on a Public Intoxication charge and the Complaint and Affidavit was filed as to that charge (Exhibit 1). Officer Harstad's statement to another Officer at the scene to save the video "under an OWI" was not an indication that Defendant was being arrested for an OWI, but was for the purpose of getting the video preserved for the longest period of time. Furthermore, Officer Harstad indicated on the Implied Consent Form (Exhibit 3) that the reason Implied Consent was being invoked was because of the PBT result, NOT because Defendant was being arrested for OWI. Additionally, the court agrees with the State's argument that Defendant was (and can be) detained for OWI investigative purposes. *See State v Dennison*, 571 N.W.2d 492 (Iowa 1997). Based on all of the above, the court **CONCLUDES** Defendant was arrested for Public Intoxication and not OWI and therefore the 45 day rule was not violated.
> The court has reviewed *State v. Miller*, 818 N.W.2d 267 (Iowa Ct. App. 2012), cited by Defendant. The court is unable to conclude that a reasonable person in Defendant's position would have thought he was being arrested for OWI. Instead, like in *Miller*, a reasonable person would have thought he was being investigated further for OWI when he was being taken to the LEC. *See Miller*, 818 N.W.2d at 276-77 (applying the *State v. Wing*, 791 N.W.2d 243 (Iowa 2010), "reasonable person" test).

The defendant filed a motion to enlarge. After arguments were heard, the court made one additional finding of fact, "That when the first Officers arrived on scene, Defendant was seated in his vehicle and the vehicle was running." However, the district court again denied the motion to dismiss.

Penn-Kennedy was convicted of OWI after trial to the court on stipulated evidence. He now appeals.

**II. Scope and Standard of Review.**

We review the district court's denial of a motion to dismiss for lack of speedy indictment for correction of errors at law. *Wing*, 791 N.W.2d at 246. "The trial court's findings of fact upon conflicting evidence are binding upon us if supported by substantial evidence." *State v. Bond*, 340 N.W.2d 276, 279 (Iowa 1983).

**III. Discussion.**

Rule 2.33(2) provides:

It is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties. Applications for dismissals under this rule may be made by the prosecuting attorney or the defendant or by the court on its own motion.
a. When an adult is arrested for the commission of a public offense, . . . and an indictment is not found against the defendant within 45 days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown or the defendant waives the defendant's right thereto.

In *Dennison*, 571 N.W.2d at 493, the supreme court considered whether the speedy indictment rule was violated under the following circumstances. On April 6, 1996, an officer saw Dennison driving in a parking lot. *Dennison*, 571 N.W.2d at 493. The officer knew Dennison did not have a valid license, and when the officer approached the car, he smelled alcohol and marijuana. *Id.* The officer informed Dennison he was being arrested for driving with a revoked license and open container. *Id.* He was read his *Miranda* rights, handcuffed, and taken to the jail. *Id.* He was then taken to a room where another officer invoked implied consent and obtained a urine sample from him. *Id.* Dennison was then booked on the driving while revoked and open container charges and released.

*Id.* More than two months later, on June 28, the officer received the toxicology report results showing Dennison had marijuana in his system. *Id.* A complaint was then filed charging Dennison with OWI, he was arrested, and the State filed a trial information. *Id.* at 493–94. The district court granted Dennison's motion to dismiss. *Id.* at 494.

On appeal, our supreme court determined Dennison was not arrested for OWI purposes on April 6:

> In this case, we find it significant that the officers did not issue a citation or complaint charging Dennison with OWI on April 6, the detention was for OWI testing, Dennison was detained for investigative purposes for a relatively short period of time, and Dennison was lawfully arrested on other charges. Clearly, *his arrest on the other charges did not preclude the State from filing separate charges arising out of the same incident or episode after the forty-five-day period had expired.*

*Id.* at 497 (emphasis added).

In *Wing*, 791 N.W.2d at 247, the supreme court noted the statutory definition of arrest found in Iowa Code section 804.5[2] and the "rigid notification requirements" of arrest found in section 804.14.[3] Emphasizing the question must be determined on a case-by-case basis, *Wing*, 791 N.W.2d at 248, the court stated:

---

[2] "Arrest is the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." Iowa Code § 804.5 (2011).

[3] Iowa Code section 804.14(1) provides:

> A person making an arrest must inform the person to be arrested of the intention to arrest the person, the reason for arrest, and that the person making the arrest is a peace officer, if such be the case, and require the person being arrested to submit to the person's custody, except when the person to be arrested is actually engaged in the commission of or attempt to commit an offense, or escapes, so that there is no time or opportunity to do so.

When an arresting officer does not follow the protocol for arrest outlined in section 804.14 and does not provide any explicit statements indicating that he or she is or is not attempting to effect an arrest, we think the soundest approach is to determine whether a reasonable person in the defendant's position would have believed an arrest occurred, including whether the arresting officer manifested a purpose to arrest.

*Wing*, 791 N.W.2d at 249.

In *Miller*, 818 N.W.2d at 268, this court was required to consider how *Wing* applied to a situation where law enforcement "arguably had probable cause to place the defendant under arrest for more than one offense." We set out in detail the facts surrounding Miller's arrest for interference with official acts on October 15, 2010, and his subsequent arrest on April 15, 2011, for OWI arising from the October 15 incident. *See Miller*, 818 N.W.2d 268-71. In district court, Miller successfully moved to dismiss the OWI charge. *Id.* at 271. The district court "relied on *Wing* . . . to determine that a reasonable person in Miller's position would have believed an arrest occurred." *Id.*

On appeal we observed, "Courts must determine on a case-by-case basis whether a seizure constitutes an arrest, considering whether the suspects are informed of their arrest, are handcuffed or booked, submit to authority, or believe they are free to leave." *Id.* at 272 (citing *Wing*, 791 N.W.2d at 248). We held,

Because officers manifested a purpose to arrest [the defendant] for interference with official acts by issuing him a citation for that offense, but did not communicate an intention to arrest him for OWI, we conclude a reasonable person in [the defendant's] position would not have believed he had been taken into custody on that second offense.

*Id.* at 268.

Keeping the above principles in mind, we review the circumstances confronting Penn-Kennedy. Penn-Kennedy was approached by police while in his vehicle, with the engine running. *See State v. Lake*, 476 N.W.2d 55, 56 (Iowa 1991) (holding there is no public intoxication violation where a "defendant was occupying the privately owned motor vehicle either on the public street or in the public parking lot" as the defendant "was in a conveyance to which the public was not permitted access"). We note Officer Harstad agreed that if an individual is in a vehicle they are not considered to be in public for purposes of public intoxication. Notwithstanding, the State contends the defendant was only arrested for public intoxication.

We decline to determine that a reasonable person would conclude he or she was being arrested for public intoxication under these facts. Iowa Code section 804.7 permits a warrantless arrest for a non-indictable public offense—such as public intoxication—only when the public offense has been committed or attempted in the officer's presence, *see* Iowa Code § 804.7(1), or the offense has in fact been committed and the officer has reasonable grounds to believe the person committed it. Iowa Code § 804.7(2). Neither applies here because Penn-Kennedy was not in public when the officers came upon the scene nor did the officer have evidence that the offense of public intoxication "had in fact been committed."[4] However, the officer had authority to make a warrantless arrest for

---

[4] At best, the officer had reasonable grounds to believe Penn-Kennedy had earlier been in public by walking to his vehicle in a public parking lot before entering the vehicle—via the statements of others. The dissent suggests that Iowa Code section 804.7(2) is meaningless if the officer is unable to rely upon the statements of others. We disagree. For example, an officer observing an individual with facial red marks and a bloody nose may conclude that the individual was a victim of assault even though the officer did not observe the assault. Similarly, an individual outside a retail store in possession of stolen

OWI—an indictable offense. Iowa Code section 804.7(3) permits an officer to make a warrantless arrest for an indictable offense such as OWI if the officer has "reasonable ground for believing that an indictable public offense has been committed and has reasonable ground for believing that the person to be arrested has committed it." *Cf. State v. Boleyn*, 547 N.W.2d 202, 205 (Iowa 1996) (noting definition of "operate" is the immediate, actual physical control over a motor vehicle that has its engine running and that the reasonable grounds test is determined under facts and circumstances known to the officers at the time the implied consent law in evoked).

In *Miller*, the basis for the citation issued was interference with official acts, an offense that occurred in the officer's presence. 818 N.W.2d at 275. Here, Penn-Kennedy's arrest can only be supported on the reasonable grounds that he committed OWI. An officer with reasonable grounds to support an indictable offense may of course charge the arrestee with a non-indictable offense. But here, the State asks us to allow a law enforcement officer to forego the proper protocol established in Iowa Code section 804.14 in informing an arrestee that they are under arrest and the reason for the arrest, place the arrestee into custody, and then grant the State a tolling of the speedy indictment time period

---

property from the store may be arrested for shoplifting even though the offense did not occur in the officer's presence. *See State v. Adams*, 554 N.W.2d 686, 690 (Iowa 1996). In these examples, the officer can rely upon his or her own senses to conclude a criminal offense has in fact occurred. Here, the officer could not conclude from his own senses that Penn-Kennedy was ever in "public." *See Veatch v. City of Waverly*, No. 13-0147, 2013 WL 5962970, at *5-6 (Iowa Ct. App. Nov. 6, 2013).

for the only offense supporting the arrest. We find this result disingenuous, and it denies the defendant the benefits of the rule.[5]

Our supreme court has stated that once arrested, the officer does not have the ability to "unarrest" the defendant and thereby permit the State to avoid the ramifications of the speedy indictment rule. *State v. Davis*, 525 N.W.2d 837, 840-41 (Iowa 1994) ("The State should not be able to disregard the time requirements of [Iowa Rule of Criminal Procedure 2.33(2)(a)] just because it released and said 'never mind for now' to defendant after he was arrested, handcuffed, booked and detained for two hours."). Similarly, once arrested, we believe that if a defendant is arrested without a warrant and charged with an offense for which there was no basis to make a warrantless arrest, the State cannot rely upon such a charge to escape the ramifications of the speedy indictment rule. In other words, although the State need not immediately file charges for every offense for which they have probable cause, and may choose to charge lesser offenses, the speedy-indictment time period begins unless the officer was legally authorized to make a warrantless arrest for the actual charge filed. Under our facts, the officer was not legally authorized to consummate a warrantless arrest for public intoxication. Accordingly we can only conclude the arrest was for the purpose of the OWI offense. To reach a contrary conclusion

---

[5] In *Miller*, 818 N.W.2d at 272, we stated, "Our cases have held that the speedy indictment rule is activated when a person is arrested for the commission of a public offense and does not extend to different offenses which have not resulted in arrest." However, our facts here differ from the facts in the cases we cited there, *State v. Edwards*, 571 N.W.2d 497, 499-500 (Iowa Ct. App. 1997), and *Dennison*, 571 N.W.2d at 497, because without the reasonable grounds to arrest for OWI, Penn-Kennedy could not have been arrested for public intoxication without a warrant. *See* Iowa Code § 804.7(1) & (2). In *Edwards* and *Dennison* independent grounds existed for the arrest on the "different offenses."

would permit the State to avoid the ramifications of the speedy indictment rule premised upon an illegal arrest.

Furthermore, unlike *Miller*, there were also no announcements by the officers at the scene suggesting or implying any crime other than OWI would be charged. In fact, Officer Harstad acknowledged that the defendant could have had a reasonable interpretation under the circumstances that he was being arrested for OWI. Penn-Kennedy was given sobriety tests and a PBT. One officer told the other, within hearing distance of the defendant, to save the video under OWI. Penn-Kennedy was asked if he had ever been arrested before. Penn-Kennedy was handcuffed and transported. Implied consent advisory was invoked, and it states "there existed reasonable grounds to believe the above person was operating a motor vehicle in violation of Iowa Code section 321J.2." A blood sample was requested and Penn-Kennedy ultimately agreed to a urine test. Based upon these circumstances, we conclude that a reasonable person in the defendant's position would have believed they were arrested for OWI, not for public intoxication as the district court found. Moreover, Penn-Kennedy's warrantless arrest was only supported by reasonable grounds for the offense of OWI. Consequently, because the indictment was filed beyond the forty-five-day limit allowed in rule 2.33(2), we reverse the district court's denial of the motion to dismiss and remand for dismissal.

**REVERSED AND REMANDED.**

Bower, J., concurs; Vogel, J., dissents.

**VOGEL, J.** (dissenting)

Because I find the operative facts of this case legally indistinguishable from *Miller*, 818 N.W.2d at 268, I must dissent from the majority decision. I would affirm the decision of the district court finding no violation of the speedy-indictment rule.

As in *Miller*, police arguably had probable cause to place Penn-Kennedy under arrest for more than one offense at the scene. *See* 818 N.W.2d at 268. Police had received information from a witness who had called 911 to report seeing a man, who was believed to be intoxicated, stumbling around in the parking lot of a restaurant, getting into a vehicle, and starting it. When police encountered the man in the running vehicle, they observed obvious signs of intoxication including a failed field sobriety test and a failed PBT. This information supplied officers with probable cause to arrest Penn-Kennedy for both OWI and public intoxication. However, just because officers had probable cause to arrest on multiple offenses, did not mean that the arrest started the speedy-indictment clock for all of the possible offenses. *See id.* at 272 ("Our cases have held that the speedy indictment rule is activated when a person is arrested for the commission of a public offense and does not extend to different offenses which have not resulted in arrest."); *see also Dennison*, 571 N.W.2d at 497 ("Clearly, [the defendant's] arrest on the other charges did not preclude the State from filing separate charges arising out of the same incident or episode after the forty-five-day period had expired."); *Edwards*, 571 N.W.2d at 500 ("An arrest for one offense based upon probable cause but accompanied by other motives does not convert the arrest into a different offense for the purposes of

applying the speedy indictment rule."). In order to determine if the speedy-indictment rule in this case was violated, we must determine what offense Penn-Kennedy was arrested for.

As in *Miller*, the officers did not inform Penn-Kennedy at the scene he was being arrested for a particular offense. *Compare Miller*, 818 N.W.2d at 275 (noting the officer did not make an explicit statement to the defendant that he was under arrest for interference), *with Dennison*, 571 N.W.2d at 493 (noting the officer informed the defendant he was under arrest for driving while his license was revoked and open container). So we must apply a reasonable person standard to determine whether an arrest occurred and to determine for what offense Penn-Kennedy was being arrested. *Miller*, 818 N.W.2d at 274. The court must look to the totality of the circumstances. *Id.* We do not confine our evaluation of the facts to a snap-shot in time when the handcuffs were placed on the defendant at the scene as Penn-Kennedy asks for us to do. *Id.* at 275–77 (considering the facts of the encounter from the point of initial contact between the defendant and police through the point the defendant was transported to another hospital for committal purposes more than five hours later).

The facts of this case indicate Penn-Kennedy was questioned by officers outside of the restaurant. He was in his vehicle when officers arrived, but the witness at the scene, who had called 911, reported that Penn-Kennedy could not even walk, indicating he was outside of his vehicle in a public parking lot, and Penn-Kennedy had retreated to his vehicle, started it up, and was probably getting ready to leave. Penn-Kennedy admitted to the officers he had just driven to the restaurant from a downtown bar and he wanted to get something to eat. A

field sobriety test and a PBT were administered, and Penn-Kennedy failed both tests. He was informed he would be transported to the ASAP office[6] to "do some more stuff." The officer explained he did not perform any more field sobriety tests at the scene because it was "extremely frigid" and he did not believe it would be a fair assessment of Penn-Kennedy's condition. Penn-Kennedy was asked if he had ever been arrested before, was handcuffed, and was transported to the police station.

Unlike the majority, I find these facts, specifically the officer's reliance on the statements of the witnesses at the scene who reported Penn-Kennedy was outside his vehicle stumbling around unable to walk, sufficient to satisfy Iowa Code section 804.7(2)—permitting a peace officer to make a warrantless arrest "[w]here a public offense[7] has in fact been committed and the peace officer has reasonable ground for believing that the person to be arrested has committed it." To hold as the majority does that the facts here are not sufficient to prove a "public offense has in fact been committed" would mean an officer may not arrest a person for a non-indictable offense that was not committed in the officer's presence. This would render section 804.7(2) meaningless as subsection (1) already authorizes an officer to conduct a warrantless arrest where the offense was committed in the officer's presence. Under what other reading of subsection (2) could an officer legally conduct a warrantless arrest for an offense not committed in his presence, if unable to rely on the statements of others, along

---

[6] This was not defined for Penn-Kennedy.
[7] A public offense is defined under Iowa Code section 701.2 as "that which is prohibited by statute and is punishable by fine or imprisonment. Clearly, public intoxication, which is a simple misdemeanor crime, is a public offense.

with observations at the scene, that an offense has in fact been committed? The witnesses' reports to police of Penn-Kennedy stumbling in public combined with the officer's observations of Penn-Kennedy's apparent intoxicated state were sufficient for the arrest under section 804.7(2).

After Penn-Kennedy fell on his way into the police station, it was discovered his foot needed medical attention. He was transported to the hospital where the officer invoked the implied consent procedures, requesting first a blood sample, which was refused, and then requesting a urine sample. *See Dennison*, 571 N.W.2d at 495 (noting that a defendant's detention for the purpose of performing field sobriety tests and the invocation of the implied consent procedures do not require an arrest). The implied consent form signed by Penn-Kennedy indicated the request was being made because Penn-Kennedy had failed the PBT. The officer did not check the box on the form that stated implied consent was being invoked because the person had been arrested for violating the OWI statute—section 321J.2.

Once the medical care was concluded and the urine sample obtained, the officer informed Penn-Kennedy's attorney, who had arrived at the hospital to confer with his client, that Penn-Kennedy was being arrested for public intoxication. The attorney advised Penn-Kennedy not to answer any questions. Penn-Kennedy was then transported back to the police station where he was booked into jail on a public intoxication charge. He was not cited or booked into jail for OWI.

While Penn-Kennedy may have considered the officer was investigating a possible OWI when the implied consent procedures were invoked, that does not

mean a reasonable person would think he was being arrested for OWI, especially when that person is booked into jail on a different offense—public intoxication. Just as in *Miller*, I find the determinative factor in this case to be Penn-Kennedy's receipt of the complaint and affidavit along with the fact he was booked into jail for public intoxication, an offense different than the offense he challenges based on the speedy-indictment rule. *See Miller*, 818 N.W.2d at 277 ("We find the most determinative factor was Miller's receipt of a citation for one offense and not the other.").

These facts are effectively indistinguishable from *Miller* where a panel of this court found a reasonable person would not believe the arrest was for OWI. The district court in Penn-Kennedy's case found the arrest to be based on the crime of public intoxication and not OWI for speedy-indictment purposes. Because I conclude substantial evidence supports the district court's determination, I would affirm the district court's denial of Penn-Kennedy's motion to dismiss.