# IN THE COURT OF APPEALS OF IOWA

No. 15-1463
Filed October 26, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**DELANDRES THOMPSON,**
　　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark D. Cleve (motion to dismiss) and Mark J. Smith (trial), Judges.

The defendant appeals from his convictions for criminal mischief in the second degree, assault on a police officer while using or displaying a dangerous weapon, and felony eluding. **AFFIRMED.**

Courtney T. Wilson of Gomez May L.L.P., Davenport, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., Bower, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**BLANE, Senior Judge.**

After a jury trial, Delandres Thompson was found guilty of criminal mischief in the second degree; assault on a police officer while using or displaying a dangerous weapon; and eluding, as a class "D" felony. On appeal, Thompson argues the trial court erred (1) in failing to grant his motion to dismiss for violation of the speedy-indictment rule, (2) in admitting testimony at trial regarding gunshots, and (3) in not granting a continuance when he was voluntarily absent from trial after a recess. Because we find no error, we affirm.

**I. Factual Background.**

On October 17, 2014, around 12:45 a.m., a tow-truck driver in the area of Sturdevant and River Drive in Davenport observed a silver Pontiac Grand Prix drive by at a high rate of speed; he also heard two or three shots go off from the vehicle. Davenport Police Officer Donnie Pridemore was investigating a hit-and-run accident when he saw the silver Grand Prix and also heard a popping sound. As the vehicle sped away from Pridemore, he heard more noise, which he then identified as gunfire. At that time, Pridemore used his radio to message other officers in the area to check for the vehicle he had observed. While he was putting out that call, he heard "several more shots to the north" and "more shots off in the distance."

Based on this, other officers responded to the area. Sergeant Geoffrey Peiffer was on duty as the street supervisor. When he heard Officer Pridemore's report, he positioned his squad car in the Grand Prix's projected path. After the Grand Prix went past his position at a high rate of speed, Sergeant Peiffer alerted

nearby units to the vehicle's current location. Based on the other officers' reports of gunshots, Sergeant Peiffer authorized the department's vehicle pursuit policy.

One of the officers, Officer Hebbel, was able to catch up to the silver Grand Prix and get behind it. Officer Hebbel activated his squad car lights and sirens, and he observed the vehicle at a high rate of speed. The vehicle did not slow down or stop in response to the lights and sirens. The vehicle eventually was unable to make a turn, ran into a stop sign, and crashed into a tree. At that point, Officer Hebbel parked his squad car behind the Grand Prix and exited. Officer Hebbel then ordered the occupants to stay in their vehicle and show their hands. The passenger exited and ran while the Grand Prix reversed, sideswiping Officer Hebbel's squad car. Hebbel had to jump out of the way to avoid being struck, and he began firing his weapon at the driver of the vehicle. The Grand Prix then struck another squad car before taking off in a different direction. The pursuit continued until officers eventually lost sight of the vehicle. During the investigation, officers found a semi-automatic .45 caliber firearm next to where the driver's side of the vehicle crashed into the tree.

As the investigation proceeded during the early morning hours, Officer Pridemore located the Grand Prix, which was parked and unoccupied. Officers canvassed houses in the area, and Officer Pridemore observed blood on the doorway of a house. An emergency services team entered the home and found Thompson hiding under a bed. The keys to the silver Grand Prix were found under the bed where Thompson was hiding. Thompson was handcuffed, searched, and then transported to the Davenport Police Department, where he was interviewed.

On October 17, 2014, following his arrest, a preliminary complaint was filed charging Thompson with driving while barred. On November 14, 2014, a trial information was filed charging Thompson with driving while barred as a habitual offender in Scott County case number AGCR365750. On December 5, 2014, preliminary complaints were filed against Thompson charging him with three class "D" felonies arising out of the events of October 17, 2014: criminal mischief in the second degree, in violation of Iowa Code section 716.4 (2013); assault on a police officer while using or displaying a dangerous weapon, in violation of section 708.3A(2); and eluding law enforcement while exceeding the speed limit by 25 miles per hour and participating in commission of another felony offense, in violation of section 321.279(3)(a). The trial information charging Thompson with these same felonies was filed on January 7, 2015, in Scott County case number FECR366651.

On February 10, Thompson filed a motion to dismiss the trial information filed in FECR366651. Following a hearing the trial court denied the motion. On March 20, 2015, Thompson's counsel filed a motion in limine. Prior to trial, his counsel orally amended the motion to include a request the court exclude evidence of the gun shots fired during the events of October 17, 2014. The trial court denied the motion. Before the trial commenced, Thompson stipulated to being the driver of the identified Pontiac Grand Prix.

During the second day of trial, the court recessed for lunch at 11:45 a.m. and announced it would reconvene at 1:30 p.m. Defense counsel told Thompson to be back at 1:15 p.m. At 1:44 p.m. the court, with counsel present, went back on the record. Thompson was not present at that time, and the court questioned

defense counsel as to whether he knew of his client's whereabouts. Defense counsel indicated that he assumed Thompson went to lunch. Counsel requested that he be allowed to check the hall. A brief recess was again taken from 1:45 p.m. to 1:57 p.m. When defense counsel returned to the courtroom, he indicated that he did not find Thompson. Thompson's trial attorney orally moved to continue the trial, which the court denied. The trial judge determined that Thompson had voluntarily absented himself from the trial and recommenced trial in his absence. Thompson did not return for the remainder of the trial. Defense counsel filed a motion in arrest of judgment and motion for new trial, asserting the defendant's right to be present at trial was violated. The trial court denied these motions.

## II. Analysis.

**A. Speedy Indictment.** A district court's decision regarding a motion to dismiss for lack of speedy indictment is reviewed for correction of errors at law. *State v. Dennison*, 571 N.W.2d 492, 494 (Iowa 1997). We are bound by the findings of fact of the district court if they are supported by substantial evidence. *State v. Lyrek*, 385 N.W.2d 248, 250 (Iowa 1986).

Under Iowa Rule of Criminal Procedure 2.33(2)(a), the State must file an indictment (trial information) within forty-five days of a defendant's arrest. Thompson moved to dismiss, arguing "the State was required to file its trial information no later than 45 days subsequent to the defendant's arrest on October 17, 2014, or by December 1, 2014." The State resisted, arguing, "Defendant was not arrested until December 5, 2014, for the crimes underlying this case."

Thompson argues that his arrest on October 17, 2014, started the speedy-indictment clock for *all* offenses he committed during the events on that date. He relies on *State v. Wing*, 791 N.W.2d 243, 249 (Iowa 2010), and argues the district court should have applied the analysis "whether a reasonable person in Defendant's position would have believed he was arrested for subsequent charges when he was arrested on a single original offense." In determining whether *any* arrest occurred for speedy-indictment purposes, the Iowa Supreme Court's current approach is to assess "whether a reasonable person in the defendant's position would have believed an arrest occurred, including whether the arresting officer manifested a purpose to arrest." *Wing*, 791 N.W.2d at 249; *see also State v. Miller*, 818 N.W.2d 267, 272 (Iowa Ct. App. 2012) (an individual may be arrested for one offense without being arrested for every crime arising from the same event).

Here, the State did not argue Thompson was not arrested on October 17, 2014. Instead, the State demonstrated he was arrested and charged with a *different* offense (driving while barred) on October 17, 2014. The speedy-indictment requirement "does not extend to a different offense not charged in the complaint related to the arrest." *See State v. Edwards*, 571 N.W.2d 497, 499 (Iowa Ct. App. 2007). "Clearly, his arrest on the other charges did not preclude the State from filing separate charges arising out of the same incident or episode after the forty-five-day period had expired." *State v. Dennison*, 571 N.W.2d 492, 497 (Iowa 1997) (citing *State v. Lies*, 566 N.W.2d 507, 508–09 (Iowa 1997)). The trial court was correct to determine the *Wing* analysis as "factually and legally distinguishable from the present case."

The Iowa Supreme Court has confirmed that *Wing* does not change the applicable framework for analyzing speedy-indictment issues in cases where multiple charges could arise out of one incident. *See State v. Penn-Kennedy*, 862 N.W.2d 384, 389–90 (Iowa 2015) (noting speedy-indictment rule was not triggered by arrest that resulted in prosecution of separate offense arising from same arrest.). *Penn-Kennedy* confirms that the reasonable-person standard from *Wing* does not control the speedy-indictment issue in this case. Thompson was charged with driving while barred after his arrest, and a separate trial information was timely filed (AGCR365750). He was subsequently arrested for and charged with additional offenses arising out of the same incident, those being challenged here, so he "was in no different position than all other defendants who face the possibility of multiple criminal prosecutions arising out of the same episode." *See id.* at 390 (citing *Dennison*, 571 N.W.2d at 493; *Lies*, 566 N.W.2d at 509). As such, the trial court correctly concluded "the controlling Iowa law is in direct opposition to the Defendant's position," and Thompson's speedy-indictment challenge fails.

**B. Evidence of "Gunshots."**

Evidentiary rulings under Iowa Rule of Evidence 5.403 are reviewed for abuse of discretion. *State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013). "A court abuses its discretion when its discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Long*, 814 N.W.2d 572, 576 (Iowa 2012).

***1. Issue Preservation.*** The State first contends Thompson failed to preserve this issue for appeal since his counsel did not object to the evidence

regarding "gunshots" when presented during the trial. The State argues Thompson's motion in limine and the court ruling denying it do not preserve the issue for appeal. *See State v. Tangie*, 616 N.W.2d 564, 568–69 (Iowa 2000) (stating a ruling on a motion in limine is generally not sufficient to preserve error for evidentiary challenges on appeal; and if a motion in limine does not definitively resolve an evidentiary issue with ultimate finality, a timely objection during trial is necessary to preserve error). However, more recently, our supreme court has clarified the rule:

> The key to our analysis is to determine what the trial court ruling purported to do. *State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979). "A ruling [on a motion in limine] only granting or denying protection from prejudicial references to challenged evidence cannot preserve the inadmissibility issue for appellate review." *Id.* However, "if the ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial." *Id.*

*State v. Alberts*, 722 N.W.2d 402, 406 (Iowa 2006). Upon our review of the record, the trial court held a hearing on the motion and ruled that "the State has a right to bring that evidence [of gunshots] in concerning the surrounding facts." Thus, the court's ruling reached the ultimate issue and preserved the issue for appeal.

***2. The Merits.*** "All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States or the state of Iowa, by statute, by these rules, or by other rules of the Iowa Supreme Court." Iowa R. Evid. 5.402. However, rule 5.403 provides that relevant evidence may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

delay, waste of time, or needless presentation of cumulative evidence." Iowa R. Evid. 5.403.

The balancing of probative value against the grounds for exclusion is for the trial court's discretion. *State v. Harmon*, 238 N.W.2d 139, 144–45 (Iowa 1976). The exercise of that discretion occurs in two steps. The court must first determine whether the evidence has some probative value; if it does, the court must then weigh the probative value against the policy grounds for exclusion. *State v. Mitchell*, 633 N.W.2d 295, 298 (Iowa 2001).

In this case, reference to gun shots prior to the pursuit of the vehicle driven by Thompson was relevant for the purpose of explaining the officers' reason for pursuing the vehicle—that it was based on their department's pursuit policy related to gun offenses. Officer Pridemore testified that the Davenport Police Department has a policy that only allows officers to pursue vehicles involved in "[f]orcible felonies or anything relating to gun crimes, shots fired." Sergeant Peiffer testified that he "used the umbrella of a recent gun crime as the ability to authorize the pursuit" under the circumstances. As such, evidence of gunshots was relevant to show the reason police began pursuing Thompson's vehicle.

Thompson further argues that this evidence is still irrelevant because he "was not charged with any crimes involving possession or use of a gun." The Iowa Supreme Court has rejected that "elements only" test because it would exclude probative evidence and hinder efforts to tell a complete story about what occurred. *State v. Lyons*, 210 N.W.2d 543, 546 (Iowa 1973).

The defendant also relies on a prior opinion from this court to buttress his argument that evidence of the gun shots was inadmissible. In *State v. Cross*, No. 12-0138, 2013 WL 530774, at \*4 (Iowa Ct. App. Feb. 13, 2013), a panel of this court found repeated references to hearsay statements about a shot fired prior to that defendant fleeing in a vehicle "likely influenced the jury to base its decision on an improper factor, that is, the implicit assertion that [defendant] had been involved in another crime or bad act, the shooting incident at the fairgrounds." However, the *Cross* case is distinguishable. First, the testimony here was not hearsay but personal observations by the officers and witnesses who heard gunshots coming from the silver Grand Prix. Second, this court held that the trial court in *Cross* had "abused its discretion in failing to limit the State's evidence to general statements," not that evidence of the gunshot was inadmissible. *See Cross*, 2013 WL 530774, at \*5. Rather, the evidence here fits within the parameters set out in *Cross* for providing an explanation for officers' decision to begin the vehicle pursuit. The evidence was therefore relevant and probative.

The court must next determine that the probative evidence was not unduly prejudicial. "Unfair prejudice arises when the evidence would cause the jury to base its decision on something other than the proven facts and applicable law, such as sympathy for one party or a desire to punish a party." *State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004). Thompson argues he was prejudiced by this evidence because it "likely provoked a response from the jury to punish a person associated with guns or shooting guns."

Here, any potential prejudicial effect did not outweigh the probative value. The evidence admitted was that gunshots came from defendant's vehicle, not that the defendant fired the shots or that the shots were fired at the witnesses. At trial, defense counsel stipulated that the defendant had been driving the silver Grand Prix, admitted that he had caused more than $4,000 in damage to the police vehicles while doing so, and admitted that he was driving "at a minimum, in a reckless manner." The video evidence from the police car camera, which shows the defendant rapidly accelerating backwards towards the officers, renders any error of admission harmless. *See State v. Martin*, 704 N.W.2d 665, 673 (Iowa 2005) (holding that admission of prejudicial prior-bad-acts evidence was harmless error because "the evidence of Martin's guilt in this case was overwhelming.").

Thus, the trial court did not abuse its discretion in admitting evidence of the gunshots.

### C. Defendant's Absence during Trial.

Because a defendant's right to be present at trial involves a constitutional right, the court reviews de novo the facts on which the voluntariness finding was made. *State v. Hendren*, 311 N.W.2d 61, 62 (Iowa 1981).

A criminal defendant has a constitutional right to be present at all critical stages of the trial. U.S. Const. amend. VI; Iowa Const. art. I, §§ 9, 10. The right may be waived by the voluntary absence of the defendant. *Hendren*, 311 N.W.2d at 62; *see Diaz v. United States*, 223 U.S. 442, 458–59 (1912). Iowa Rule of Criminal Procedure 2.27(2)(a) authorizes trial courts to resume proceedings when a defendant is voluntarily absent, stating, in part, "In all cases,

the progress of the trial or any other proceeding shall not be prevented whenever a defendant, initially present: Is voluntarily absent after the trial or other proceeding has commenced." For a defendant's absence to be voluntary, he "must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away." *State v. Beloved*, No. 14–1796, 2015 WL 8390222, at *2 (Iowa Ct. App. Dec. 9, 2015) (quoting *Taylor v. United States*, 414 U.S. 17, 19 n.3 (1973)).

Thompson argues before proceeding with the trial, the trial court "should have more sufficiently inquired into the circumstances of the defendant's disappearance to justify its finding of voluntary absence." Here, the defendant had been present at the trial from its start through the State's case. Thompson was aware of the trial process taking place. He was informed of his obligation to return for the trial after the lunch recess—both by the trial judge and his own counsel, who instructed him to return at 1:15 p.m. When the trial was to reconvene, Thompson was not present. The trial judge gave defense counsel an opportunity to look for Thompson in the courthouse hall and also called Thompson's mother in an attempt to locate him, both to no avail. Thompson was absent and his counsel had no explanation. Thompson's counsel orally moved the court for a continuance due to his client's absence. Based on these facts, and pursuant to the rule, the trial judge made a finding that Thompson had "voluntarily absented" himself from the trial, denied the continuance motion, and ordered trial to proceed in Thompson's absence.

It is significant that Thompson did not return at any time during the remainder of the trial, including the jury's return of the verdict. Following the trial,

Thompson's counsel filed a motion in arrest of judgment and for a new trial, contending that Thompson had a right to be present and that the court erred in denying the motion to continue. At no time has Thompson or his counsel explained or provided a reason justifying Thompson's absence and failure to attend the remainder of the trial.

Further, the trial court was rightfully reluctant to presume Thompson had a legitimate reason for not returning to the trial given prior behavior where he had failed to attend a pretrial conference. *See Beloved*, 2015 WL 8390222, at *3 (providing the trial court's assessment that "the defendant is just stalling trying to avoid the inevitable resolution of this case," based on previous actions of the defendant throughout the trial justified a finding of voluntary absence.). The trial court's finding that Thompson had voluntarily absented himself is supported by the record. There was no error in proceeding with the trial in Thompson's voluntary absence.

## III. Conclusion

Finding the trial court did not commit any error as asserted by Thompson, we affirm the verdict and sentence of the trial court.

**AFFIRMED.**