MANSFIELD, Justice
(concurring specially).
I join the court’s opinion. I write separately to emphasize that our caselaw prior to State v. Wing, 791 N.W.2d 243 (Iowa 2010), required a statutory arrest to trigger the speedy indictment rule. In Wing, we jettisoned that approach and decided that a seizure for Fourth Amendment purposes was sufficient to start the clock running. Id. at 249. We did so while acknowledging that a statutory arrest “is not coterminous with the standard used to determine whether a person has been seized *868 for Fourth Amendment purposes.” Id. at 248.
In other words, Wing brought about a significant change in the law. I think most Iowa prosecutors and defense attorneys would agree.
Wing hasn’t worked out and this case illustrates why. The Waterloo police were responding to an emergency report at 5:30 a.m. from a fifteen-year-old girl that she had been drugged and gang-raped in a house. The girl further reported that her fifteen-year-old girlfriend might still be in the house and might also have been gang-raped. The officers entered the house, found the other girl crying, and detained the occupants of the house as well as Deantay Williams who was walking away from the house. The officers took statements from all the occupants and collected DNA samples from the five men and boys, including Williams. They were then released. No one was told he was arrested; no one was booked. Many months later, the final DNA test results came back. At this point, four of the five were formally arrested and charged, the DNA results having exonerated one of the five.
Most people would consider the process I have described to be good police work. It was fair to the State, the defendants, the victims, and particularly the individual who was exonerated and never charged. But Wing wouldn’t allow it. Instead, Wing forces the State into the following quandary: Do not take anyone into temporary custody, regardless of the circumstances or the emergency, or else you will have to bring your trial information against that person within 45 days. Thus, Wing, predictably, leads to premature charging decisions.
For decades prior to Wing, our court had consistently interpreted Iowa Rule of Criminal Procedure 2.33(2)(a) as being triggered by a statutory arrest, not mere Fourth Amendment custody. Thus, in State v. Schmitt, we noted that rule 2.33(2)(a) (then rule 27(2)(a)) had been enacted simultaneously with Iowa Code sections 804.5 and 804.14 (Supp. 1977) regarding arrest and needed to be construed with them. 290 N.W.2d 24, 26 (Iowa 1980). We said, “[W]e define ‘arrest’ in rule 27(2)(a) to be the same as the definition provided in section 804.5, as explained in section 804.14.” Id. We overruled Schmitt in Wing when we swapped out statutory arrest for Fourth Amendment custody.
But Schmitt was not the only decision overruled by Wing. In State v. Gathercole, we held that a person who had been taken into custody in Utah by a private transport company and brought under guard to Iowa following extradition had not been arrested for speedy indictment purposes, noting, “We define an ‘arrest’ in speedy-trial cases by our general law of arrest under Iowa Code chapter 804 because rule of criminal procedure 27(2) and Iowa Code section 804.14, which describes the manner of making arrests, were enacted together.” 553 N.W.2d 569, 572 (Iowa 1996).
Then, in State v. Dennison, we stated, “This court has also rejected the contention that a de facto arrest triggers the speedy indictment time.” 571 N.W.2d 492, 495 (Iowa 1997) (per curiam). In Dennison, the defendant was “detained for investigative purposes for a relatively short period of time” but no citation or complaint was issued. Id. at 497. Approximately three months later, when the drug test results came back, the defendant was charged with OWL Id. at 493-94. We found no speedy indictment violation. Id. at 496-97. We discussed the same policy consideration I’ve referred to above:
If a defendant is arrested and charged with a crime, and that charge is later dismissed based upon a test result, it is inevitable the defendant will have suf *869 fered some adverse consequences from the arrest, such as enduring booking procedures, possible incarceration awaiting initial appearance, bond or release requirements, court appearances, expenditures for legal representation, and publication of the arrest in the newspaper.
Id. at 497; see also id. (“[I]t is beneficial for both the State and the defendant for the officer to refrain from making an arrest and issuing a citation for a violation for which the most crucial evidence is not available. Peace officers should not arrest individuals on insufficient evidence.”).
Both the language and the results in Gathercole and Dennison are incompatible with what we said and did in Wing.
Similarly, in State v. Davis, the officer took the defendant into custody, handcuffed him, completed a written citation and complaint, gave those forms to the defendant to sign, turned the defendant over to the jailer, and booked him. 525 N.W.2d 837, 838 (Iowa 1994). We said that this “easily corresponds” to the statutory definition of arrest in Iowa Code sections 804.5 and 804.14. Id. at 839. It did not matter that the defendant had been released before his initial appearance. Id. at 841; see also State v. Rains, 574 N.W.2d 904, 910 (Iowa 1998) (“The definition of ‘arrest’ for purposes of [the speedy indictment rule] is governed by the general law of arrest provided in Iowa Code chapter 804, specifically sections 804.5 and 804.14.”).
While our pre-Wing decisions consistently invoked the Iowa statutes on arrest, not the Fourth Amendment, they perhaps lacked some clarity as to when a statutory arrest occurs for speedy indictment purposes. Today’s decision in my view helpfully draws a bright line. I join it in full.
Waterman and Zager, JJ., join this special concurrence.